PEOPLE v D'ANGELO

PEOPLE v SHELINE

Docket Nos. 57807, 57588. Argued October 6, 1976 (Calendar Nos. 13, 14).—Decided September 26, 1977.

Dominic P. D'Angelo was convicted by a jury in Berrien Circuit Court, Julian E. Hughes, J., of delivery of LSD. A motion for a directed verdict of acquittal on the ground that the defense of entrapment had been proven as a matter of law was denied. The issue was submitted to the jury under the Michigan Criminal Jury Instruction on entrapment, and the defendant was later granted a new trial on the ground that the instructions were contrary to recent appellate decisions. The Court of Appeals, V. J. Brennan, P. J., and J. H. Gillis and R. M. Maher, JJ., denied leave to appeal (Docket No. 26601). The people appeal.

Timothy S. Sheline was convicted by a jury in Monroe Circuit Court, James J. Kelley, Jr., J., of breaking and entering a building with intent to commit larceny. A motion for a directed verdict of acquittal on the ground that the defense of entrapment had been proven as a matter of law was denied. The issue was submitted to the jury, and defense counsel did not object to the charge as a whole. The Court of Appeals, Allen, P. J., and D. F. Walsh, J. (O'Hara, J., concurring in part), reversed on the ground that the issue was not submissible to a jury (Docket No. 20696). The people appeal. *Held:*

1. The objective test of entrapment focuses on the propriety of the government conduct which resulted in the charges against the defendant instead of the defendant's "predisposition" to commit the crime charged. The purpose of the entrapment doctrine is to deter unlawful government activities and to

REFERENCES FOR POINTS IN HEADNOTES

[1, 2, 7, 10] 21 Am Jur 2d, Criminal Law §§ 81, 143–145.
[3–6, 11] 75 Am Jur 2d, Trial § 425.
[6] 29 Am Jur 2d, Evidence § 409.
[8] 29 Am Jur 2d, Evidence § 156.
[9] 29 Am Jur 2d, Evidence §§ 148, 154.

preclude the implication of judicial approval of impermissible government conduct.

2. The policy considerations for the adoption of the objective test of entrapment compel with equal force the conclusion that the judge and not the jury must determine its existence. Deterrence of law enforcement conduct which essentially manufactures crime is a duty which transcends the determination of guilt or innocence in a given case and stands ultimately as the responsibility of the judiciary. Resolution of the entrapment issue by a court, rather than a jury, will provide through an accumulation of cases a body of precedent which will stand as a reference point for law enforcement officials and the courts. It will also insure that the jury's verdict is free from the taint of undue and unnecessary prejudice which might well be generated by hearing the evidence of police conduct in an entrapment case.

3. The guilt or innocence of the defendant is irrelevant to the determination of the entrapment inquiry, which focuses on the nature of the police conduct. Therefore, determination by the court of the entrapment issue does not deprive the defendant of the Sixth Amendment right to trial by jury.

4. When a defendant raises the issue of entrapment, whether before or during trial, the appropriate procedure will require the trial court to conduct an evidentiary hearing in the jury's absence. The defendant will not be required to admit the criminal act in order to raise the entrapment issue. Any testimony he gives at the entrapment hearing will not be admissible against him in the case in chief for substantive purposes, but may be admitted to impeach his credibility if it is inconsistent with any testimony he gives before the jury. When the court has decided that entrapment has not occurred, the jury will not be free to find entrapment. The defendant has the burden of proving entrapment by a preponderance of the evidence because he is alleging that, even if he is culpable, he should be insulated from prosecution because of the impropriety of government conduct. In deciding the entrapment question the trial court should make specific findings of fact. Should the trial court find the claim of entrapment to be proved, the related charge will be dismissed. If the court finds the claimed entrapment not proved, the prosecution will proceed. The trial court's finding will be subject to appellate review under the clearly erroneous standard.

5. The order for new trial is affirmed as to defendant D'Angelo; the judgment of the Court of Appeals remanding for a new trial is modified as to defendant Sheline. Each cause is

remanded to the trial court for determination of the issue of entrapment by the trial judge and for further proceedings.

Justice Williams dissented because the decision in this case extends one step further what he thinks was originally a mistake. The objective test of entrapment is unrealistic and hampers police work. This case extends the rationale of the objective test and holds that the whole matter will be decided by a judge, without intervention of the point of view of the community represented by the jury. In so holding, the majority adheres to a standard rejected by the Supreme Court of the United States and by a majority of the states.

64 Mich App 193; 235 NW2d 177 (1975) modified.

## OPINION OF THE COURT

1. CRIMINAL LAW—ENTRAPMENT—OBJECTIVE TEST.

The objective test of entrapment focuses upon the propriety of the government conduct which resulted in the charges against a defendant instead of upon the defendant's "predisposition" to commit the crime charged.

2. CRIMINAL LAW—ENTRAPMENT—PURPOSE OF DOCTRINE.

The purpose of the entrapment doctrine is to deter unlawful government activities and to preclude the implication of judicial approval of impermissible government conduct.

3. CRIMINAL LAW—ENTRAPMENT—QUESTION OF LAW—POLICE CONDUCT.

The policy considerations for the adoption of the objective test of entrapment compel with equal force the conclusion that the judge and not the jury must determine its existence; deterrence of law enforcement conduct which essentially manufactures crime is a duty which transcends the determination of guilt or innocence in a given case and stands ultimately as the responsibility of the judiciary.

4. CRIMINAL LAW—ENTRAPMENT—QUESTION OF LAW—TRIAL BY JURY.

Determination by a trial court of an entrapment issue does not deprive a defendant of the Sixth Amendment right to trial by jury because the determination involves the court's evaluation of the government conduct which resulted in the charges against the defendant; the guilt or innocence of the defendant is irrelevant to that determination (US Const, Am VI).

5. CRIMINAL LAW—TRIAL—ENTRAPMENT—EVIDENTIARY HEARING.

A trial court must conduct a separate evidentiary hearing in the

jury's absence when a defendant raises the issue of entrapment, whether before or during trial.

6. CRIMINAL LAW—EVIDENCE—ADMISSIBILITY—ENTRAPMENT—EVIDEN-
   TIARY HEARING—DEFENDANT'S TESTIMONY.

   Any testimony that a defendant gives at an evidentiary hearing on an entrapment issue, including his possible admission of the crime charged, will not be admissible against him in the case in chief for substantive purposes, but it may be admitted in the court's discretion to impeach his credibility as inconsistent with his testimony given before the jury.

7. CRIMINAL LAW—ENTRAPMENT—PUBLIC POLICY—POLICE CONDUCT.

   The defense of entrapment is not interjected to establish the absence of an essential element of the crime charged but to present facts collateral or incidental to the criminal act which justify acquittal on the ground of an overriding public policy to deter instigation of crime by law enforcement officers in order to get a conviction.

8. CRIMINAL LAW—ENTRAPMENT—EVIDENTIARY HEARING—BURDEN OF
   PROOF.

   Because entrapment is essentially an affirmative defense which focuses exclusively upon the nature of police conduct which, if improper, is not mitigated, justified, or excused by the disposition of the defendant, the defendant bears the burden of proving a claim of entrapment by a preponderance of the evidence.

9. CRIMINAL LAW—BURDEN OF PROOF—COURTS—DUE PROCESS.

   The Supreme Court has the power to allocate the burden of proof in a logical and reasonable fashion unless it offends some principle of justice so deeply rooted in the traditions and conscience of the people as to be ranked as fundamental (US Const, Am XIV).

DISSENTING OPINION BY WILLIAMS, J.

10. CRIMINAL LAW—ENTRAPMENT—OBJECTIVE TEST.

    *The objective test of entrapment is unrealistic and hampers proper and decent police work in considering neither the predisposition of the defendant nor the subjective intentions of the police under the particular circumstances; the police, in protection of society, must be allowed to use tactics appropriate to the degree of criminality and difficulty of detection.*

11. CRIMINAL LAW—ENTRAPMENT—QUESTION FOR COURT.

> *A decision not only that the test of entrapment is objective but also that the whole matter will be decided by a judge, without intervention of the point of view of the community represented by the jury, adheres to a standard rejected by the Supreme Court of the United States and by a majority of the states.*

*Frank J. Kelley,* Attorney General, and *Robert A. Derengoski,* Solicitor General, for the people; *John A. Smietanka,* Prosecuting Attorney, and *Sally M. Zack,* Assistant Prosecuting Attorney, for the people in *D'Angelo; James J. Rostash,* Prosecuting Attorney, and *Dennis M. Powers,* Special Assistant Prosecuting Attorney, for the people in *Sheline.*

*Keller, Keller & Creager* for defendant D'Angelo.

*State Appellate Defender Office* (by *Lander C. McLoyd* and *Dawn Van Hoek)* for defendant Sheline.

RYAN, J. In separate and unrelated trials Dominic P. D'Angelo was convicted of delivery of a controlled substance (LSD),[1] and Timothy S. Sheline was convicted of breaking and entering with intent to commit larceny.[2]

Common to both trials were the defendants' claims of entrapment. In each case, after denying a motion for directed verdict of acquittal, the trial judge submitted the entrapment issue to the jury together with the issue of guilt or innocence. Both juries convicted.

In *Sheline* the Court of Appeals reversed[3] holding that, based upon our decision in *People v Turner,* 390 Mich 7; 210 NW2d 336 (1973), the

---

[1] MCLA 335.341(1)(b); MSA 18.1070(41)(1)(b).

[2] MCLA 750.110; MSA 28.305.

[3] 64 Mich App 193; 235 NW2d 177 (1975).

issue of entrapment should have been decided by the trial court and not the jury.

In *D'Angelo* the trial court granted defendant's request for a new trial for the same reason.

The cases were consolidated for appeal and we granted leave in order to decide whether the entrapment question is to be decided by the trial court or the jury.

## I

In *Turner* we adopted what has come to be known as the objective test of entrapment as defined in Mr. Justice Stewart's dissent in *United States v Russell,* 411 US 423; 93 S Ct 1637; 36 L Ed 2d 366 (1973), Mr. Justice Frankfurter's concurring opinion in *Sherman v United States,* 356 US 369; 78 S Ct 819; 2 L Ed 2d 848 (1958), and the concurring opinion of Mr. Justice Roberts in *Sorrells v United States,* 287 US 435; 53 S Ct 210; 77 L Ed 413 (1932).

As we noted in *Turner,* the modern American entrapment doctrine with the objective test appears to have its roots in the case of *Saunders v People,* 38 Mich 218 (1878), specifically the concurring opinion of Justices MARSTON and CAMPBELL. The test focuses upon the propriety of the government conduct which resulted in the charges against the defendant instead of upon the defendant's alleged "predisposition" to commit the crime charged.[4]

---

[4] Mr. Justice Stewart states the test this way:

"But when the agents' involvement in criminal activities goes beyond the mere offering of such an opportunity, and when their conduct is of a kind that could induce or instigate the commission of a crime by one not ready and willing to commit it, then—regardless of the character or propensities of the particular person induced—I think entrapment has occurred. For in that situation, the Government has engaged in the impermissible manufacturing of crime, and

The purpose of the entrapment doctrine is to deter unlawful government activities and to preclude the implication of judicial approval of impermissible government conduct.

In *Turner* we did not directly address the issue whether entrapment is a question for the judge or the jury. Implicit in our holding, however, were not only the conclusions reached by Justices Stewart, Frankfurter and Roberts in their respective opinions, but the underlying rationale employed by them. In each of those opinions the author alluded, directly or indirectly, to the proposition that the objective test of entrapment is more properly applied by the trial court, but Mr. Justice Stewart, whom Justice SWAINSON quoted at length in *Turner,* put it most clearly:

"In the case before us, I think that the District Court erred in submitting the issue of entrapment to the jury, with instructions to acquit only if it had a reasonable doubt as to the respondent's predisposition to committing the crime. Since, under the objective test of entrapment, predisposition is irrelevant and the issue is to be decided by the trial judge, the Court of Appeals, I believe, would have been justified in reversing the conviction on this basis alone. But since the appellate court did not remand for consideration of the issue by the District Judge under an objective standard, but rather found entrapment as a matter of law and directed that the indictment be dismissed, we must reach the merits of the respondent's entrapment defense." 411 US 446 (dissenting opinion).

The policy considerations which moved us to adopt the objective test of entrapment compel with equal force the conclusion that the judge and not

the federal courts should bar the prosecution in order to preserve the institutional integrity of the system of federal criminal justice." 411 US 445 (dissenting opinion).

the jury must determine its existence. The thesis is that law enforcement conduct which essentially manufactures crime is a corruptive use of governmental authority which, when used to obtain a conviction, taints the judiciary which tolerates its use. It is a practice which relies for its success upon judicial indifference, if not approval, and it must be deterred. Its deterrence is a duty which transcends the determination of guilt or innocence in a given case and stands ultimately as the responsibility of an incorruptible judiciary.

As Mr. Justice Roberts pointed out in *Sorrells:*

"The protection of its own functions and the preservation of the purity of its own temple belongs only to the court. It is the province of the court and of the court alone to protect itself and the government from such prostitution of the criminal law." 287 US 457 (concurring opinion).[5]

Aside from the forceful policy considerations which dictate judicial vigilance in guarding against and precluding the use of improper law enforcement tactics in the judicial process, there are pragmatic reasons why the duty should not be passed along to the jury.

A jury verdict of guilty provides no evaluation of the challenged police conduct in the case and gives no guidance by which to measure the propriety of future official conduct. Similarly, a verdict of not guilty fails to disclose whether the police conduct challenged in the case was found to be impermissible or that the prosecution simply failed to prove the defendant's guilt beyond a reasonable doubt.

---

[5] Mr. Justice Roberts concludes the paragraph with:

"If in doubt as to the facts it [the court] may submit the issue of entrapment to a jury for advice. But whatever may be the finding upon such submission the power and the duty to act remain with the court and not with the jury." 287 US 457.

Resolution of the entrapment issue by the court, on the other hand, will provide, through an accumulation of cases, a body of precedent which will stand as a point of reference both for law enforcement officials and the courts. Where jury determination thwarts the rationale of the defense, judicial determination results in the formulation of appropriate standards of conduct.

Moreover, the concern expressed by the United States Supreme Court in *Jackson v Denno,* 378 US 368; 84 S Ct 1774; 12 L Ed 2d 908 (1964), and this Court in *People v Walker (On Rehearing),* 374 Mich 331; 132 NW2d 87 (1965), that evidence pertaining to guilt is likely to infect a jury determination of the voluntariness of a confession has an equal and analogous application to jury determination of entrapment.[6]

---

[6] In *Jackson* the Court said:

"The jury, however, may find it difficult to understand the policy forbidding reliance upon a coerced, but true, confession, a policy which has divided this Court in the past [citation] and an issue which may be reargued in the jury room. That a trustworthy confession must also be voluntary if it is to be used at all, generates natural and potent pressure to find it voluntary. Otherwise the guilty defendant goes free. Objective consideration of the conflicting evidence concerning the circumstances of the confession becomes difficult and the implicit findings become suspect.

"The danger that matters pertaining to the defendant's guilt will infect the jury's findings of fact bearing upon voluntariness, as well as its conclusion upon that issue itself, is sufficiently serious to preclude their unqualified acceptance upon review in this Court, regardless of whether there is or is not sufficient other evidence to sustain a finding of guilt." 378 US 382–383.

And later:

"If it finds the confession involuntary, does the jury—indeed, can it —then disregard the confession in accordance with its instructions? If there are lingering doubts about the sufficiency of the other evidence, does the jury unconsciously lay them to rest by resort to the confession? Will uncertainty about the sufficiency of the other evidence to prove guilt beyond a reasonable doubt actually result in acquittal when the jury knows the defendant has given a truthful confession?

"It is difficult, if not impossible, to prove that a confession which a jury has found to be involuntary has nevertheless influenced the verdict or that its finding of voluntariness, if this is the course it took,

Just as in the determination of the voluntariness[7] of an alleged confession, determination by the trial court of the entrapment issue will insure that the jury's verdict is free from the taint of undue and unnecessary prejudice which might well be generated by the concomitant duty to decide voluntariness in the confession case or the propriety of police conduct in the entrapment case.

In sum, we share the view expressed by Judge O'HARA who, in the concurring portion of his separate opinion in the Court below, wrote:

"[I]t is beyond human mental limitations to allow a jury to hear evidence clearly establishing the corpus delicti of a given offense and at the same time charge that if entrapment occurred this evidence is to be disregarded by them."[8]

A court determination of entrapment does not deprive the defendant of the Sixth Amendment right to trial by jury. The focus of the entrapment inquiry under the objective test is upon the nature of the police conduct. The guilt or innocence of the defendant is irrelevant to that determination. A decision whether entrapment has occurred will involve the court's evaluation of the government conduct which resulted in the charges against the defendant. Should the court determine that the government did not engage in impermissible conduct, the guilt or innocence of the defendant will be decided by the jury.

We conclude therefore that under the objective

was affected by the other evidence showing the confession was true."
378 US 388–389.

In *Walker (On Rehearing)* this Court substantially reiterated the considerations expounded upon in *Jackson,* 374 Mich 333–336.

[7] We use the term voluntariness in the post-*Miranda* sense. *Miranda v Arizona,* 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

[8] 64 Mich App 200–201.

test mandated by *Turner* the issue of entrapment
is best decided by the trial court outside the pres-
ence of the jury. This procedure is necessary to
effectuate the policy considerations which underlie
the objective test and is more consonant with an
efficacious and fair system of justice.[9] We agree
with the Court of Appeals that a court determina-
tion of the entrapment issue is mandated by our
decision in *Turner*.[10] Since the trials in both of
these cases took place well after the *Turner* deci-
sion, we affirm the Court of Appeals conclusion
that the trial courts erred in submitting the issue
of entrapment to the respective juries.

## II

When the defendant raises the issue of entrap-

---

[9] The American Law Institute, Model Penal Code (Proposed Official
Draft, 1962), § 2.13 provides:

"(2) Except as provided in Subsection (3) of this Section, a person
prosecuted for an offense shall be acquitted if he proves by a prepon-
derance of evidence that his conduct occurred in response to an
entrapment. The issue of entrapment shall be tried by the Court in
the absence of the jury."

Alaska has also concluded that the objective test is best applied by
the court. *Grossman v State,* 457 P2d 226 (Alas, 1969).

[10] Recent decisions of the Court of Appeals have concluded uni-
formly that trial court determination of the entrapment question as
advocated by Mr. Justice Stewart was implicitly adopted by us in
*Turner. People v Keefe,* 69 Mich App 431; 245 NW2d 78 (1976);
*People v Stanley,* 68 Mich App 559; 243 NW2d 684 (1976); *People v
Cushman,* 65 Mich App 161; 237 NW2d 228 (1975); *People v Fraker,*
63 Mich App 29; 233 NW2d 878 (1975); *People v Zeegers,* 61 Mich App
546; 233 NW2d 76 (1975); *People v Habel (On Rehearing),* 53 Mich
App 399; 220 NW2d 74 (1974).

All of the foregoing Court of Appeals cases were decided after the
trial in *Sheline,* thus affording no explicit guidance for the trial judge
in that case. Moreover, the first decision in *People v Habel,* 50 Mich
App 630; 213 NW2d 822 (1973) *(Habel I),* which held that under the
objective test jury resolution of the entrapment question was required
in this state, was "on the books" at the time *Sheline* was tried.
Rehearing was granted in that case and upon reconsideration the
Court *(Habel II)* agreed that trial court determination of the entrap-
ment issue was implicit in *Turner.* It is understandable therefore that
the trial judge in *Sheline* may have been misled by *Habel I.*

ment, whether before or during trial, the appropriate procedure will require the trial court to conduct an evidentiary hearing in the jury's absence, procedurally similar to what the bench and bar of this state have come to know as the "*Walker* hearing"[11] in cases involving statements attributable to the defendant. Both the prosecution and the defendant will be free to present evidence. It is likely, of course, that the defendant himself will testify in the hearing in order to establish the claimed entrapment.

Since our test for entrapment does not look to the defendant's so-called predisposition to commit the crime charged but focuses instead upon the challenged governmental activity, the defendant will not be required to admit the criminal act in order to raise the entrapment issue. Any testimony the defendant gives at the entrapment hearing, including his possible admission of the crime charged or some aspect of it, will not be admissible against him in the case in chief for substantive purposes as an admission, but should the defendant give testimony before the jury in the case in chief on a material matter inconsistent with his entrapment hearing testimony, the prior inconsistent testimony *may* be admitted in the court's discretion to impeach his credibility.

When the court has decided that entrapment has not occurred, the jury will not be free to find entrapment and consequently the defendant is not entitled to a jury instruction on entrapment. There will be, in other words, no "second bite at the apple" enabling the jury to second-guess the determination of the trial court.[12] If the court

---

[11] *People v Walker (On Rehearing), supra.*

[12] This is consistent with our holding in *People v Walker, supra,* which required a hearing by the court to determine whether a proffered confession was voluntary and therefore admissible. *Walker*

determines that no entrapment is proved and directs the prosecution to proceed, the jury's role is limited to the determination whether the people have proved the defendant's guilt beyond a reasonable doubt in light of the defenses raised. Of course evidence presented at the entrapment hearing *may* likewise be admissible at trial insofar as it is also relevant to the contested issues which are tried to the jury.

When an accused claims entrapment he is asserting, in essence, entitlement to the benefit of a judicial policy that his claim, if true, is a bar to the prosecution of the case. His claim does not involve an assessment of guilt or innocence and, in fact, is irrelevant to it. It is in that respect that the entrapment claim is unique and distinguishable from the more common defenses in criminal cases such as alibi, insanity, self-defense, lack of specific intent and the like, which assert the absence of one or more elements of the crime charged and involve therefore the assessment of guilt or innocence. The defense of entrapment is not interjected to establish the absence of an essential element of the crime but to present facts collateral or incidental to the criminal act which justify acquittal on the ground of an overriding public policy to deter instigation of crime by enforcement officers in order to get a conviction.

"Entrapment is a defense not because the defendant is innocent but because, as stated by Justice Holmes [citation], 'it is less evil that some criminals should escape than that the Government should play an ignoble part.'" *People v Benford,* 53 Cal 2d 1, 9; 345 P2d 928 (1959).

held that once the court had been allocated the duty of determining voluntariness, it was not proper to allow the jury to redetermine the same question. The jury was limited to determining the weight and credibility of the confession once the court had found it admissible.

In claiming entrapment the accused directs the judicial inquiry away from the issue of his guilt or innocence and makes a collateral charge that the government is guilty of a corrupt abuse of its law enforcement authority. It is a charge which places the defendant in an accusatorial posture upon an issue which, as we have said, is irrelevant to his guilt or innocence. As such it is both fair and logical that he who makes the charge of inducement should bear the burden of proving the charge. See for example: *Gorin v United States,* 313 F2d 641 (CA 1, 1963); *United States v Sherman,* 200 F2d 880, 882 (CA 2, 1952) (L. Hand, J.); *People v Moran,* 1 Cal 3d 755; 463 P2d 763 (1970); *State v Grilli,* 304 Minn 80; 230 NW2d 445 (1975).

While the majority of our sister jurisdictions have not allocated the burden of proof of entrapment to the defendant, neither have they adopted the objective test.

In jurisdictions in which the so-called subjective test has been adopted the focus is as much upon whether the defendant was "predisposed" to commit the crime or was "otherwise innocent" as upon the propriety of the police conduct. When the emphasis, or any part of it, is upon the question whether an innocent person or one already corrupt has been induced to commit the crime charged, attention is directed away from the government's conduct and toward the conduct and character of the defendant. When that is done, as it is in subjective test jurisdictions, the government, not the defendant, is in the position of accuser and the burden of proof is usually upon the prosecution.

Federal courts have bifurcated the subjective test of entrapment into subissues of inducement and predisposition, placing the burden upon the

defendant to prove that the police had induced him, while placing upon the government the burden of proving that the defendant was predisposed. *United States v Greenberg,* 444 F2d 369 (CA 2, 1971); *Gorin v United States, supra; United States v Sherman,* 200 F2d 880, 882 (CA 2, 1952).

Though logically sound, this bifurcated approach has been substantially abandoned due to the potential confusion stemming from charging the jury on two different burdens. Generally the Federal courts, formerly amenable to this approach, now place the burden of proof on the government after the defendant has adduced some evidence that a government agent initiated the illegal conduct. See for example: *United States v Braver,* 450 F2d 799 (CA 2, 1971); *Kadis v United States,* 373 F2d 370 (CA 1, 1967); *Sagansky v United States,* 358 F2d 195 (CA 1, 1966).

Other Federal courts which never opted for the bifurcated approach but still apply the subjective test maintain a procedure whereby the burden is on government to show that the intent to commit the crime originated in the mind of the accused. *United States v Gurule,* 522 F2d 20 (CA 10, 1975); *United States v Gardner,* 516 F2d 334 (CA 7, 1975), *cert den* 423 US 861 (1975); *United States v Eddings,* 478 F2d 67 (CA 6, 1973); *United States v Harrell,* 458 F2d 655 (CA 5, 1972), *cert den* 409 US 846 (1972).

In essence the predominant Federal or subjective procedure of placing the burden of proof upon the government is in all instances premised upon the inquiry into predisposition or, more generally, origin of intent. The considerations underlying the various Federal approaches are in no manner appropriate to the allocation of the burden of proof under the objective test. Since the justification for

placing the burden of proof upon the people has been held to depend upon the need to prove predisposition, the absence of that issue from the case nullifies the logic of so allocating the burden. Absent the disposition issue, the government is simply rebutting charges levied against its agents by the defendant.

As articulated above, the defense of entrapment in this state does not involve an assessment of guilt or innocence and does not focus upon any susceptibility attributable to the accused. Essentially, a hard analysis of each entrapment case invariably leads to the conclusion that the accused is affirmatively alleging that, even if culpable, he should be insulated from prosecution due to the impropriety of the government conduct. The challenge focuses exclusively upon the nature of the police conduct which, if improper, will not be mitigated, justified or excused in any fashion by the disposition of the accused. As such, it is consistent that the defendant should have the burden of proving by a preponderance of the evidence that he was entrapped.

It is clearly within the power of this Court to allocate the burden of proof in a logical and reasonable fashion.

"[I]t is 'normally within the power of the State to regulate procedures under which its laws are carried out, including the burden of producing evidence and the burden of persuasion,' and its decision in this regard is not subject to proscription under the Due Process Clause unless 'it offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.'" *Patterson v New York,* 432 US 197, 201–202; 97 S Ct 2319; 53 L Ed 2d 281 (1977).

See also *Speiser v Randall,* 357 US 513, 523; 78
S Ct 1332; 2 L Ed 2d 1460 (1958); *Leland v Oregon,*
343 US 790, 798; 72 S Ct 1002; 96 L Ed 1302
(1952); *Snyder v Massachusetts,* 291 US 97, 105; 54
S Ct 330; 78 L Ed 674 (1934).

To burden the defendant with proving his affir-
mative defense of entrapment by a preponderance
of the evidence is certainly not offensive to the
Due Process Clause. *Patterson v New York, supra;*
*Rivera v Delaware,* 429 US 877; 97 S Ct 226; 50 L
Ed 2d 160 (1976); *Leland v Oregon, supra.*

We hold therefore that the defendant shall have
the burden of proving the claim of entrapment by
a preponderance of the evidence.[13]

In deciding the entrapment question the trial
court should make specific findings of fact. Should
the trial court find the claim of entrapment to be
proved, the related charge will be dismissed. If the
court finds the claimed entrapment not proved, the
prosecution will proceed.

The trial court's finding will be subject to appel-
late review under the clearly erroneous standard.

### III

Decisions of the Court of Appeals which con-
clude that entrapment is an issue for judicial
determination under *Turner* have split as to the
proper disposition upon appeal when reviewing a
*post-Turner* case where entrapment was submitted
to the jury. Compare for example: *People v Cush-
man,* 65 Mich App 161; 237 NW2d 228 (1975);
*People v Keefe,* 69 Mich App 431; 245 NW2d 78
(1976); *People v Fraker,* 63 Mich App 29; 233
NW2d 878 (1975). The Court of Appeals in *Sheline*
reversed and remanded for a new trial.

---

[13] In accord is the American Law Institute, *Model Penal Code,*
§ 2.13, cited earlier in footnote 9.

We modify this disposition of *Sheline* and remand the case to the trial court for determination of the issue of entrapment based upon the evidence adduced at trial.

We affirm the trial court order of a new trial in *D'Angelo* and remand for the same disposition.

Unlike ourselves, the trial judges in both cases will be aided when reviewing the trial record by having seen and heard the entrapment issue witnesses which affords them a superior factfinding perspective.

If in either case the trial judge concludes that the defendant was entrapped, the case will be dismissed and the defendant discharged. If entrapment is found not to have occurred, a new trial will be required in either case since, at the prior trials, defendants were forced to admit the criminal acts involved in order to invoke the entrapment defense which in turn precluded or jeopardized other possible defenses.

KAVANAGH, C. J., and LEVIN, COLEMAN, and FITZGERALD, JJ., concurred with RYAN, J.

BLAIR MOODY, JR., J., took no part in the decision of this case.

WILLIAMS, J. *(dissenting)*. I dissent from the majority decision because it extends one step further what I think was originally a mistake.

My brother RYAN has written an opinion in accord with the objective test of entrapment. I disagreed with that test in *People v Turner,* 390 Mich 7, 23; 210 NW2d 336 (1973), because I felt it was unrealistic and hampered proper and decent police work. I believed then and continue to believe that the police, in protection of society, must be allowed to use tactics appropriate to the degree

of criminality and difficulty of detection. Different tactics are warranted against hardened criminals well educated in the ploys of keeping their criminal activity undetected from those that might be used against a juvenile first offender. "[P]olice conduct must be measured with respect to the conduct of the defendant." *Turner, supra,* 24–25 (WILLIAMS, J., opinion for reversal).

The objective test judges entrapment on a set of criteria divorced from the problems faced by the police or the relative danger to society from the particular defendant. This case extends that rationale and decides that not only will neither the predisposition of the defendant nor the subjective intentions of the police under the particular circumstances be considered, but the whole matter will be decided by a judge, without intervention of the point of view of the community represented by the jury.[1] In so holding, the majority adheres to a standard rejected by the United States Supreme Court and the majority of our sister states.

The minority view which has now become the jurisprudence of Michigan is not required by natural justice and does not, in my mind, comport with the practical actualities of the workaday administration of justice. I see neither the necessity nor the wisdom of reinforcing such a course and respectfully dissent.

[1] Although it is generally held that under the objective test the issue of entrapment is most appropriately decided by a judge rather than jury, one author states the following:

"It does not necessarily follow, however, that there must be an absolute rule against ever submitting controversy about whether entrapment in fact occurred to a jury's determination, especially if the pertinent test concerns the likely effect of police conduct on people of ordinary disposition. Law teachers apart, judges should perhaps be the last to lay claim to any special knowledge about the workings of ordinary human nature." Wise, *Criminal Law and Procedure, 1974 Annual Survey of Michigan Law,* 21 Wayne L Rev 401, 424 (1975).