## PEOPLE v HAMPTON

Docket No. 52968. Submitted June 9, 1981, at Grand Rapids.—Decided December 15, 1981.

Owen Hampton, Jr., was charged with delivery of amphetamines. Following a hearing, Berrien Circuit Court, Chester J. Byrns, J., found that the defendant had been entrapped and dismissed the charges with prejudice. The people appeal. *Held:*

The record reveals that conduct of the government in agreeing to recommend leniency for a friend of the defendant in a separate case in return for the defendant's obtaining evidence against another person by purchasing amphetamines from him, unilaterally terminating the agreement without notice to the defendant, inducing the defendant to make the purchases, and then charging him with delivery of amphetamines constituted entrapment.

Affirmed.

1. CRIMINAL LAW — ENTRAPMENT.

Michigan law follows the objective test of entrapment which focuses upon the propriety of government conduct which results in charges against a defendant in determining whether entrapment occurred; the guilt or innocence of the defendant is irrelevant to the determination.

2. CRIMINAL LAW — ENTRAPMENT.

The burden of proof at an entrapment hearing as to whether a defendant was the victim of entrapment is on the defendant.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *John A. Smietanka,* Prosecuting Attorney, and *Angela Baryames,* Assistant Prosecuting Attorney, for the people.

*Quentin R. Fulcher,* for defendant.

REFERENCES FOR POINTS IN HEADNOTES
[1] 21 Am Jur 2d, Criminal Law § 206.
[2] 30 Am Jur 2d, Evidence § 1160.

Before: D. F. WALSH, P.J., and MACKENZIE and J. R. ERNST,* JJ.

D. F. WALSH, P.J. The prosecution appeals from the dismissal of charges against the defendant based on the trial court's finding of entrapment.

Defendant was bound over for trial on four charges of delivery of amphetamines, MCL 333.7401(1), (2)(b); MSA 14.15(7401)(1), (2)(b). Defendant subsequently raised the defense of entrapment, and the trial court held several evidentiary hearings.

The testimony established that in late October or early November of 1979, defendant met with Jan Edwards, Chief of Berrien County Metro Narcotics Squad, and Robert McDowell, an attorney representing defendant's girl friend in a criminal case. McDowell had represented defendant in the past on various unrelated matters. At the meeting, defendant entered into an agreement with Edwards whereby defendant would assist in obtaining evidence against a certain doctor who allegedly was selling amphetamines illegally. In return for defendant's help, Edwards promised to use whatever influence he might have with the judge who would be sentencing defendant's girl friend and recommend that she not receive a jail sentence. Edwards informed defendant that he would be contacted by someone who would instruct him regarding the exact arrangements for the controlled purchase of a large quantity (500 to 1,000) of pills from the doctor.

By late December, 1979, Edwards became dissatisfied with defendant's failure to arrange a large purchase. Edwards testified that he informed McDowell that the agreement with defendant was

---

* Circuit judge, sitting on the Court of Appeals by assignment.

terminated and that he would not use any influence with respect to the sentencing of defendant's girl friend. Edwards never directly contacted defendant to tell him that the agreement had been rescinded. Edwards also admitted that he did not look for defendant, even though he knew that he was still in the area operating a disco. McDowell also stated that he did not communicate this message to defendant.

Defendant further testified that he was never told that the arrangement with the Metro Squad had been terminated. Defendant stated that in December, 1979, he received a telephone call from Edwards who told him that he would be contacted by a woman regarding the purchase of pills and that there was no reason to use his attorney as a go-between. Defendant stated that he was subsequently contacted by a woman who identified herself as "Cindy". Defendant then obtained the pills from the doctor who was the subject of his agreement with Edwards and sold them to "Cindy". Defendant explained that he knew that "Cindy" was a police officer and that he thought the purchase of pills was part of the scheme to incriminate the doctor.

Edwards testified that in early 1980 he instructed Marilyn Kitchen, an undercover agent, to telephone defendant. Edwards listened as Kitchen called defendant and asked him about a drug purchase. Kitchen testified that during the phone conversation defendant referred to the doctor who was involved in the prior agreement between defendant and the police. After Kitchen made four purchases of amphetamines from defendant, he was arrested and charged with the four narcotic offenses.

The sole issue on appeal is whether the trial

court erred in ruling that defendant had been entrapped. We find no error.

Michigan law follows the objective test of entrapment, which focuses on the propriety of the government conduct resulting in the charge against the defendant, rather than on the defendant's alleged predisposition to commit the crime charged. *People v Turner,* 390 Mich 7, 22; 210 NW2d 336 (1973). In *People v D'Angelo,* 401 Mich 167, 173-174; 257 NW2d 655 (1977), the Supreme Court stated:

"The purpose of the entrapment doctrine is to deter unlawful government activities and to preclude the implication of judicial approval of impermissible government conduct.

\* \* \*

"The thesis is that law enforcement conduct which essentially manufactures crime is a corruptive use of governmental authority which, when used to obtain a conviction, taints the judiciary which tolerates its use. It is a practice which relies for its success upon judicial indifference, if not approval, and it must be deterred. Its deterrence is a duty which transcends the determination of guilt or innocence in a given case and stands ultimately as the responsibility of an incorruptible judiciary."

Based on these policy considerations, the central issue to be resolved at an entrapment hearing has been defined as follows:

"The focus of the entrapment inquiry under the objective test is upon the nature of the police conduct. The guilt or innocence of the defendant is irrelevant to that determination. A decision whether entrapment has occurred will involve the court's evaluation of the government conduct which resulted in the charges against the defendant. Should the court determine that the government did not engage in impermissible conduct,

the guilt or innocence of the defendant will be decided by the jury." *Id.,* 176.

Most recently, in *People v White,* 411 Mich 366, 390; 308 NW2d 128 (1981), the Supreme Court reiterated the limited scope of an entrapment hearing. Quoting from *Sorrells v United States,* 287 US 435, 459; 53 S Ct 210; 77 L Ed 413 (1932), the Court stated:

" 'The applicable principle is that courts must be closed to the trial of a crime instigated by the government's own agents. No other issue, no comparison of equities as between the guilty official and the guilty defendant, has any place in the enforcement of this overruling principle of public policy.' "

Consequently, in the instant case, we are not concerned with whether defendant had the requisite criminal intent to commit the crime or whether defendant reasonably believed that he was acting as a police agent. The guilt or innocence of the accused is irrelevant at an entrapment hearing. The real issue is whether the conduct of the police was so reprehensible that the judiciary will not become involved in it so as not to taint the court system with abusive law enforcement practices.

A defendant must carry the burden of proof at an entrapment hearing. *D'Angelo, supra,* 183. In the instant case, the record is unclear as to the exact burden of proof utilized by the trial court. The court stated at one point that the prosecutor bore the burden of proof and later retracted that comment and indicated that he was "not putting a burden of proof". Whether or not the trial court imposed the burden of proof on the proper party, we conclude from our independent review of the

record that the court's finding of entrapment was correct.

The government conduct under review includes the agreement between defendant and the Metro Narcotics Squad to secure incriminating evidence against a physician in exchange for assistance in obtaining leniency in the sentencing of defendant's girl friend. When the drug purchases were not forthcoming, the police decided to terminate the arrangement with defendant but failed either to inform defendant with regard to the termination of the agreement or to assure itself that defendant had been contacted. After several weeks had passed, the police agency, still with no knowledge that defendant had been advised that their agreement with him had been terminated, took advantage of the circumstances underlying the agreement by inducing sales of narcotics obtained from the very same doctor who was the subject of the unilaterally terminated arrangement. We find no error in the circuit court's finding of entrapment.

Affirmed.