*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

CRAIG WILLIAM NEWBY,

        Defendant-Appellant.

UNPUBLISHED
February 19, 2025
11:51 AM

No. 372314
Wayne Circuit Court
LC No. 24-002782-01-FH

Before: YATES, P.J., and LETICA and N. P. HOOD, JJ.

PER CURIAM.

Defendant, Craig William Newby, initiated an online conversation in which he reached out and suggested a sexual encounter with someone who turned out to be a law-enforcement agent. In one of his first messages, defendant wrote: "No matter what ur answer is I still wanna suck u. But are u really 18. U look like ur 16[.]" The undercover agent responded that "i'm younger i'm really only 15" and defendant replied: "Ok. R u still down to hook up." The two arranged to meet at an address that the agent provided, and defendant went to that address, where he was arrested. After defendant was charged with several crimes, he moved to dismiss all charges based on entrapment. The trial court denied that motion. Now, on appeal by leave granted,[1] defendant contends that the trial court erred by denying his motion to dismiss the charges based on entrapment. We affirm.

## I. FACTUAL BACKGROUND

In April 2024, defendant used a website called "Sniffies" to converse with a user whom he believed wanted to engage in sexual activities with him. That user was actually an agent working for the Ohio Internet Crimes Against Children Task Force (Ohio ICAC). The agent testified that she was working for "Operation Draft Net" in conducting "undercover chat investigations to seek out individuals who were looking to engage in sex acts with children in the community."

---

[1] *People v Newby*, unpublished order of the Court of Appeals, entered October 10, 2024 (Docket No. 372314).

Because the Sniffies terms-of-service agreement required users to be 18 years old, the agent represented the age of 18 in her Sniffies profile, and the profile picture depicted a man "in his late twenties to early thirties." The agent affirmed that, in certain situations, the Ohio ICAC's process is to disclose the age of the minor "early on," but that "in order to not get blocked or banned from the platform there might be times where an age is disclosed in a chat conversation on a secondary platform." Also, she testified that "there's nothing under the Department of Justice standards that says I have to submit my age within a certain timeframe. It's just to make sure that it is discussed in the conversation prior to meeting."

Without prompting, defendant reached out to the agent's profile at approximately 8:00 a.m. on April 24, 2024. Defendant and the agent engaged in the following conversation on Sniffies:

[Defendant]: Hey

[Defendant]: What r u looking for

[Agent]: bored so got on hbu [how about you]

[Defendant]: I'm looking to link and suck

\* \* \*

[Defendant]: Can u drive I can host

[Defendant]: In [sic] 26 btw

[Agent]: no car

\* \* \*

[Defendant]: Ok. I just wanna keep incontact [sic] for tonight

[Agent]: wanna text off here? I'm not always on

[Defendant]: Yea whats ur number

\* \* \*

[Defendant]: Can I ask u one thing. No matter what ur answer is I still wanna suck u. But are u really 18. U look like ur 16

After that exchange, the two continued their online conversation via text message:

[*Defendant*]: So what time tonight r u Available

[*Defendant*]: Also did u read my message on sniffles

[*Agent*]: yeah i saw your message . . . i'm younger i'm really only 15

[*Defendant*]:  Ok.  R u still down to hook up.

[*Agent*]:  idc [I don't care] what you wanna do?

[*Defendant*]:  Sure.

\* \* \*

[*Agent*]:  what would we do tho[?]

[*Defendant*]:  I would suck u.

[*Defendant*]:  Unless u are a bottom and want to be fucked

\* \* \*

[*Defendant*]:  I'd like to see a pic of dick lol

[*Defendant*]:  Can u take one[?]

\* \* \*

[*Defendant*]:  So what time tonight[?]

[*Agent*]:  my mom works at 4 so like 4:30-5?

[*Defendant*]:  Ok

[*Agent*]  ok cool

\* \* \*

[*Defendant*]:  Gotta send that address for me to come there

[*Agent*]:  I'm home alone u can come here

[*Defendant*]:  Ok address?

At approximately 10:21 p.m., defendant arrived at the address furnished by the agent, where police officers were waiting as part of their operation.  Defendant was then arrested.  He was subsequently charged with child sexually abusive activity, MCL 750.145c(2)(a); accosting a child for immoral purposes, MCL 750.145a; communicating with another to commit a crime on the Internet for the purpose of committing child sexually abusive activity, MCL 750.145d(2)(f); and communicating with another to commit a crime on the Internet for the purpose of accosting a child for immoral purposes, MCL 750.145d(2)(d).

Defendant moved to dismiss the charges on the ground of entrapment.  The trial court held an evidentiary hearing and made its findings under the two-prong standard from *People v Johnson*, 466 Mich 491, 498; 647 NW2d 480 (2002).  The trial court ultimately denied defendant's motion,

explaining that defendant "was interested in doing this activity whether the person was eighteen or whether the person was fifteen and took actions in the context of these conversations mostly on his own in terms of saying what he'd be interested in doing, requesting . . . explicit pictures from the individual after they indicated they were fifteen, requesting where's the address, coordinating the time to meet with them." The trial court stated that, "broadly speaking and considering the law as it is it's pretty clear to this Court that [defendant], after he was told this individual was fifteen, proceeded as if he was going to proceed anyways and that sort of lead [sic] to this case." Therefore, the trial court denied defendant's motion to dismiss. Defendant then appealed by leave granted.

## II. LEGAL ANALYSIS

This Court must review the trial court's findings of fact and its "ultimate ruling on the issue of entrapment . . . for clear error." *People v Jade*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 365951); slip op at 6. Clear error exists if this Court "is left with a definite and firm conviction that a mistake has been made." *Johnson*, 466 Mich at 497-498. The defendant bears "the burden of establishing by a preponderance of the evidence that he was entrapped." *Id*. at 498.

"In Michigan, 'entrapment is defined by a modified objective test.' "[2] *Jade*, ___ Mich App at ___; slip op at 7 (citation omitted). Under that test, the defendant is deemed entrapped "if either (1) the police engaged in impermissible conduct that would induce a law-abiding person to commit a crime in similar circumstances or (2) the police engaged in conduct so reprehensible that it cannot be tolerated." *Johnson*, 466 Mich at 498. But if "law enforcement officials present nothing more than an opportunity to commit the crime, entrapment does not exist." *Id*. Accordingly, the "focus of the entrapment inquiry under the objective test is upon the nature of the police conduct." *People v D'Angelo*, 401 Mich 167, 176; 257 NW2d 655 (1977). "The guilt or innocence of the defendant is irrelevant to that determination." *Id*. "A decision whether entrapment has occurred will involve the [trial] court's evaluation of the government conduct which resulted in the charges against the defendant." *Id*.

Turning to the two forms of entrapment recognized by Michigan law, i.e., inducement and reprehensible police conduct, see *Johnson*, 466 Mich at 498, we agree with the trial court's finding that defendant has not shown that he was entrapped in the instant case. Just as our Supreme Court did in *Johnson*, 466 Mich at 498-508, we shall explain why defendant has not demonstrated either form of entrapment.

---

[2] The prosecution argues, as a threshold matter, that the entrapment defense should not be available unless and until our Legislature prescribes that defense and defines its contours in a statute. Our Supreme Court, however, has recognized and defined the entrapment defense in several opinions, including *Johnson*, 466 Mich at 498, and we are not at liberty to ignore or discard those decisions. Therefore, we decline the prosecution's invitation to consider whether the entrapment defense was improperly created by judicial fiat.

## A. INDUCEMENT

In determining whether "the police engaged in impermissible conduct that would induce a law-abiding person to commit a crime in similar circumstances[,]" *id.*, the trial court must consider the following 12 factors:

> (1) whether there existed appeals to the defendant's sympathy as a friend, (2) whether the defendant had been known to commit the crime with which he was charged, (3) whether there were any long time lapses between the investigation and the arrest, (4) whether there existed any inducements that would make the commission of a crime unusually attractive to a hypothetical law-abiding citizen, (5) whether there were offers of excessive consideration or other enticement, (6) whether there was a guarantee that the acts alleged as crimes were not illegal, (7) whether, and to what extent, any government pressure existed, (8) whether there existed sexual favors, (9) whether there were any threats of arrest, (10) whether there existed any government procedures that tended to escalate the criminal culpability of the defendant, (11) whether there was police control over any informant, and (12) whether the investigation was targeted. [*Id.* at 498-499.]

Here, the trial court made findings on every one of those 12 *Johnson* factors. Then, after providing all those findings, the trial court concluded that "if you look at it factor by factor I don't think this really rises to the level of the preponderance standard to show that law enforcement in this particular operation engaged in impermissible conduct to induce [defendant] to commit this potential crime." The trial court's detailed findings cannot be characterized as clearly erroneous. Beyond that, the record reveals that the outcome of the entrapment motion in this case is controlled by this Court's own binding precedent.

Recently, in *Jade*, ___ Mich App ___, this Court considered whether entrapment occurred when law-enforcement officers posted an advertisement on an escort-service website posing as an escort who catered to adults, and then the defendant engaged in a text-message conversation with the officers' decoy and agreed to meet the decoy to engage in sexual activities even after the decoy revealed that she was 15 years old. *Id.* at ___; slip op at 2. On appeal, the defendant argued that he was entitled to reversal on the grounds of entrapment. *Id.* at ___; slip op at 7. This Court stated that the "officers simply presented defendant with the opportunity to engage in criminal activity[,]" which was significant "because it underscore[d] the fact that defendant's actions were not coerced or manipulated by law enforcement." *Id.* at ___; slip op at 9. Instead, it "highlight[ed] defendant's voluntary choice to commit the crime for which he was convicted." *Id.* Officers "posed as a 15-year-old who was offering sexual acts in exchange for money, posted an advertisement on an adult-oriented website, and initially claimed to be old enough to post on the site." *Id.* "After defendant responded to the advertisement, defendant was informed in clear and certain terms that the decoy was actually 15 years old." *Id.* at ___; slip op at 9-10. The defendant "was thereby presented with an opportunity to either proceed with committing the relevant criminal acts or decline." *Id.* at ___; slip op at 10. This Court noted, in conclusion, that "[m]erely presenting an opportunity to commit a crime is not entrapment." *Id.* That analysis applies with equal force in the instant case.

Here, the conversation between defendant and the undercover agent began on the Sniffies platform at approximately 8:00 a.m. on April 24, 2024, according to the testimony of the agent. It continued via text message from 11:14 a.m. until 10:35 p.m. In one of the first text messages, the agent revealed being 15 years old, yet the text messages continued, uninterrupted, from 11:14 a.m. until 1:00 p.m. The agent reinitiated the conversation via text at 3:48 p.m. and again at 7:20 p.m., and defendant reinitiated the conversation at 8:57 p.m.

During the evidentiary hearing, the agent testified that she allowed people who reached out to her to "set the pace, tone and subject matter of the conversation. If it leads to sex I'm going to investigate it. If it doesn't I'm going to stop the investigation." She explained that, in accordance with the Sniffies terms-of-service agreement, she was required to indicate that her persona was 18 years old in order to create a profile on the platform, and she waited until the conversation she had with defendant moved to text messages before she claimed to be 15 years old. The agent described that as an accepted process in the Ohio ICAC "in order to not get blocked or banned" from certain platforms, and she stated she was only required to claim to be a minor before setting up a meeting with defendant.

Defendant insists that the agent induced his crime, contending that there was no indication he was looking for a minor on Sniffies and that he had no history of looking for minors on Internet platforms. The undercover agent testified that the operation was a "proactive investigation," which meant that officers were "going out and posing in an undercover capacity," not "reacting to tips or information provided through cyber tips . . . ." Although defendant had no history of that type of behavior, and there was no initial indication he was seeking minors on Sniffies, the purpose of the operation was to "conduct undercover chat investigations to seek out individuals who were looking to engage in sex acts with children in the community." After the agent claimed to be 15 years old, defendant continued the conversation, requesting sexual images and planning to meet in-person to engage in sexual activities. Thus, the agent did not engage in "impermissible conduct that would induce a law-abiding person to commit a crime in similar circumstances[,]" see *Johnson*, 466 Mich at 498, because a law-abiding person would have stopped the conversation once the agent's status as a minor was revealed. Although the agent twice reinitiated the conversation, as the trial court astutely observed, that was "a reasonable prompting" in "the context of the conversation" to "see what exactly was going on considering what [defendant] had previously indicated what he wanted to do and where he wanted to do it and with whom he wanted to do it with . . . all taking place after the agents identify themselves as being a fifteen year old." Thus, the trial court did not clearly err by finding there were no "long time lapses between the investigation and the arrest," *id*., that could suggest impermissible inducement. See *Jade*, ___ Mich App at ___; slip op at 6.

Defendant also faults the trial court for focusing on his subjective state of mind, rather than using the "modified objective test" for establishing entrapment. *Id*. at ___; slip op at 7 (quotation marks and citation omitted). Defendant contends that, objectively, a person in his position would have been induced to take part in a meeting, considering the enticements, adult photographs, and sexual conversation. But "consideration must be given to the willingness of the accused to commit the act weighed against how a normally law-abiding person would react in similar circumstances." *Id*. at ___; slip op at 11 (quotation marks and citation omitted). As the trial court accurately noted, defendant was "the lead of this in terms of what he wanted to do, when and where, while initially thinking the person was an eighteen year old adult, still interested and insisting and even went to meet up with physically with a person he thought was fifteen." Indeed, the trial court emphasized

-6-

that defendant "was more than happy to do so, whether or not the person was eighteen or fifteen." In his final message on the Sniffies platform, defendant stated: "Can I ask u one thing. No matter what ur answer is I still wanna suck u. But are u really 18. U look like ur 16[.]" The agent revealed being 15 years old in the ongoing text-message conversation, and although the agent continued to engage in the conversation with defendant, the agent repeatedly refused to send any sexual images and allowed defendant to direct the specifics of the conversation, such as what sexual activities he wanted to perform and when he wanted to meet in-person. Thus, the record does not give rise to a definite and firm conviction that the trial court clearly erred in any of its factual findings, so we have no basis to afford relief under the inducement theory of entrapment. See *Johnson*, 466 Mich at 497-498.

## B. REPREHENSIBLE CONDUCT

Defendant faults the trial court for failing to consider his claim that "the police engaged in conduct so reprehensible that it cannot be tolerated." *Id*. at 498. Without question, "there is certain conduct by government that a civilized society simply will not tolerate, and the basic fairness that due process requires precludes continuation of the prosecution where the police have gone beyond the limit of acceptable conduct in ensnaring the defendant, without regard to causation." *People v Fabiano*, 192 Mich App 523, 532; 482 NW2d 467 (1992). But this is not such a case. In denying defendant's motion, the trial court stated that "[i]t appears that [defendant] was interested in doing this activity whether the person was eighteen or whether the person was fifteen and took actions in the context of these conversations mostly on his own in terms of saying what he'd be interested in doing" and "requesting, you know, explicit pictures from the individual after they indicated they were fifteen, requesting where's the address, coordinating the time to meet with them." Defendant contends that the agent's conduct was reprehensible because defendant's crime was manufactured by the agent while he was engaging in lawful activity on a lawful platform, but the trial court found that the agent's behavior "does not indicate . . . impermissible conduct by law enforcement."

Defendant initially reached out to the undercover agent's profile on Sniffies believing that he was communicating with someone who was at least 18 years old. But during that conversation on Sniffies, the agent gave defendant a telephone number for further contact, and the conversation moved to text messages. Defendant had asked on Sniffies: "Can I ask u one thing. No matter what ur answer is I still wanna suck u. But are u really 18. U look like ur 16[.]" After the conversation switched to text messages, the agent responded that "i'm younger i'm really only 15 [years old]," and defendant replied: "Ok. R u still down to hook up." Defendant then suggested sexual activity and requested that the agent send him sexual images.

Although defendant initially engaged in lawful conversation on a legal platform, defendant stated that, "[n]o matter what" the persona's age, he was interested in engaging in sexual activities. Once the agent claimed to be a minor, defendant continued the conversation and moved forward with his plan to meet in-person to engage in such activities. Therefore, like the defendant in *Jade*, ___ Mich App at ___; slip op at 10, defendant was presented with "an opportunity to either proceed with committing the relevant criminal acts or decline," and "[m]erely presenting an opportunity to commit a crime is not entrapment." Accordingly, the agent's conduct was not "so reprehensible that it cannot be tolerated," *Johnson*, 466 Mich at 498, so defendant has failed to establish, by a preponderance of the evidence, that he was entrapped. Thus, "[i]n concluding that the trial court did not clearly err in its determination on either prong of the entrapment test," we further conclude

-7-

that "the trial court did not clearly err in its ultimate decision to deny defendant's motion to dismiss on the ground of entrapment." *Jade*, ___ Mich App at ___; slip op at 12.

Affirmed.

/s/ Christopher P. Yates
/s/ Anica Letica
/s/ Noah P. Hood