PEOPLE v CRAWFORD

Docket No. 73588. Submitted January 10, 1985, at Grand Rapids.—
Decided June 3, 1985.

David L. Crawford was convicted of delivery of a controlled
substance following a bench trial in Cheboygan Circuit Court
and was sentenced, Robert C. Livo, J. Defendant appeals. *Held:*

1. The trial court's finding that defendant was not entrapped
is not clearly erroneous and will not be overturned.

2. The trial court did not err in refusing to dismiss the
charges against defendant on the ground that his preliminary
examination was not conducted within 12 days of his arraign-
ment. While arguments that delay in conducting the prelimi-
nary examination should not be regarded as reversible error
unless the defendant can show prejudice resulting from the
delay were rejected by the Supreme Court in *People v Weston,*
413 Mich 371; 319 NW2d 537 (1982), it applied the 12-day rule
in that case based on the fact that the defendant was incarcer-
ated during the delay. Because defendant in this case was not
incarcerated during the delay between his arraignment and
preliminary examination, because the delay in conducting the
preliminary examination does not affect the integrity of the
fact-finding process, and because application of the 12-day rule
in this case would merely require the prosecution to start again
from the beginning without affecting the merits of the case, the
delay in conducting the preliminary examination does not
entitle defendant to any relief.

Affirmed.

R. M. MAHER, J., dissented from the majority's holding that

REFERENCES FOR POINTS IN HEADNOTES

[1] 29 Am Jur 2d, Evidence § 148 *et seq.*
Availability in state court of entrapment where accused denies
committing acts which constitute offense charged. 5 ALR4th 1128.

[2-7] 21 Am Jur 2d, Criminal Law § 202 *et seq.*
Modern status of the law concerning entrapment to commit narcot-
ics offense-state cases. 62 ALR3d 110.

[8, 9] 21 Am Jur 2d, Criminal Law § 408 *et seq.*
Admissibility of confession or other statement made by defendant
as affected by delay in arraignment—modern state cases. 28
ALR4th 1121.

the 12-day rule does not apply where an accused awaiting preliminary examination is not in physical custody. He would hold that the only exception to application of the rule is where manifest injustice would result from conducting the examination within the 12-day period. He would further hold that an accused need not show the existence of prejudice before a violation of the 12-day rule would require reversal of his conviction.

### OPINION OF THE COURT

1. CRIMINAL LAW — TRIAL — ENTRAPMENT.

A trial court must conduct a separate evidentiary hearing when a defendant raises the issue of entrapment; at that hearing the defendant bears the burden of proving entrapment by a preponderance of the evidence.

2. CRIMINAL LAW — ENTRAPMENT — APPEAL.

The standard of appellate review of a trial court's decision regarding a claim of entrapment is that of "clear error".

3. CRIMINAL LAW — ENTRAPMENT — OBJECTIVE TEST.

Michigan follows the objective test of entrapment, under which the police may engage in conduct that is likely, when objectively considered, to afford a person ready and willing to commit the crime an opportunity to do so; where the involvement of the police in criminal activities goes beyond the mere offering of such an opportunity, however, and where their conduct is of a kind that could induce or instigate the commission of a crime by one not ready and willing to commit it, then, regardless of the character or propensities of the particular person induced, entrapment has occurred.

4. CRIMINAL LAW — ENTRAPMENT.

The fact that an initial transaction has been tainted by police misconduct constituting entrapment does not necessarily make all similar transactions tainted by entrapment; rather, the facts and circumstances of each similar transaction must be examined to determine whether the taint of the police activity is still present.

5. CRIMINAL LAW — ENTRAPMENT.

The defense of entrapment was not intended to be the remedy for any and all misconduct or neglect by police and their agents; rather, the defense is only a remedy for conduct likely, when objectively considered, to induce or instigate the commission of the crime by a person not ready and willing to commit it.

6. CRIMINAL LAW — ENTRAPMENT — PROBABLE CAUSE — UNDER-
   COVER AGENTS.

   The existence of probable cause or reasonable suspicion is not a
   prerequisite to the use of undercover agents in the context of a
   defendant's claim of entrapment.

7. CRIMINAL LAW — ENTRAPMENT — SALE OF CONTRABAND.

   Mere requests for a person to sell contraband, even repeated
   requests, are not conduct likely, when objectively considered, to
   induce the commission of the crime by a person not ready and
   willing to commit it.

8. CRIMINAL LAW — ARRAIGNMENT — PRELIMINARY EXAMINATION —
   12-DAY RULE.

   A delay of more than 12 days between the time a defendant was
   arraigned and his preliminary examination does not entitle the
   defendant to reversal of his conviction where he was not
   incarcerated during the delay, the delay did not affect the
   integrity of the fact-finding process, and application of the 12-
   day rule would merely require the prosecution to start again
   from the beginning without affecting the merits of the case.

PARTIAL CONCURRENCE AND PARTIAL DISSENT BY R. M. MAHER, J.

9. CRIMINAL LAW — ARRAIGNMENT — PRELIMINARY EXAMINATION —
   12-DAY RULE.

   *The 12-day rule, under which a person charged with a felony
   must be brought before a magistrate for a preliminary exami-
   nation within 12 days of his arraignment or be discharged, was
   not intended to apply only where the accused is incarcerated
   during the delay; a delay of more than 12 days may be granted
   only for good cause shown to secure a fair and impartial
   examination to the accused (MCL 766.4, 766.7; MSA 28.922,
   28.925).*

*Frank J. Kelley,* Attorney General, *Louis J.
Caruso,* Solicitor General, *Joseph P. Kwiatkowski,*
Prosecuting Attorney, and *Michael A. Nickerson,*
Assistant Attorney General, for the people.

State Appellate Defender (by *Stuart B. Lev),* for
defendant on appeal.

Before: MacKenzie, P.J., and R. M. Maher and R. J. Chrzanowski,* JJ.

R. J. Chrzanowski, J. After a nonjury trial, defendant was convicted of delivery of the controlled substance phencyclidine (PCP), MCL 333.7401(2)(b); MSA 14.15(7401)(2)(b). Defendant was placed on probation for five years, the first year of which was to be served in the county jail, and he appeals as of right.

I

This case is one of 11 cases before this panel which arose out of an undercover investigation in Cheboygan County. Defendant argues that the tactics employed by the police undercover agent involved in this investigation were so reprehensible that every case arising out of this investigation should be reversed on the ground of entrapment. Alternatively, defendant argues that the circumstances which led to the delivery of which defendant was convicted show that defendant himself was entrapped.

A claim of entrapment is resolved by a trial court at a separate evidentiary hearing at which the defendant bears the burden of proving entrapment by a preponderance of the evidence. The trial judge's decision is subject to appellate review under the "clearly erroneous" standard. *People v D'Angelo,* 401 Mich 167; 257 NW2d 655 (1977). As a matter of state constitutional law, Michigan follows the objective test of entrapment stated in the dissenting opinion of Justice Stewart in *United States v Russell,* 411 US 423, 445; 93 S Ct 1637; 36 L Ed 2d 366 (1973):

* Circuit judge, sitting on the Court of Appeals by assignment.

"[G]overnment agents may engage in conduct that is likely, when objectively considered, to afford a person ready and willing to commit the crime an opportunity to do so.

\* \* \*

"But when the agents' involvement in criminal activities goes beyond the mere offering of such an opportunity, and when their conduct is of a kind that could induce or instigate the commission of a crime by one not ready and willing to commit it, then—regardless of the character or propensities of the particular person induced—I think entrapment has occurred. For in that situation, the Government has engaged in the impermissible manufacturing of crime, and the federal courts should bar the prosecution in order to preserve the institutional integrity of the system of federal criminal justice." (Citations omitted.)

See *People v Turner,* 390 Mich 7, 21; 210 NW2d 336 (1973), and *People v D'Angelo, supra,* 401 Mich 172-173, fn 4.

Defendant points to statements like the following from *People v Turner, supra,* 390 Mich 22:

"[T]he real concern in these cases [is] whether the actions of the police were so reprehensible under the circumstances, that the Court should refuse, as a matter of public policy, to permit a conviction to stand."

Such statements must be examined in the context of the opinions in which they occur. In *Turner,* for example, the Court was rejecting a test which turned on the subjective effect of the police conduct on the defendant and was explaining its preference for a test turning on the objective nature of the police conduct at issue. *Turner* and similar cases should not be read as indicating that a defense of entrapment is available any time the police or the agents do something which can be characterized as "reprehensible". The defense of

entrapment presents a conflict between two significant state interests: the interest of the state in deterring police misconduct and the interest of the state in punishing criminals. The *Turner* Court resolved this conflict by striking a balance between the two conflicting interests. The balance struck is embodied in the test stated by Justice Stewart in his previously quoted dissent in *Russell*. *Turner* and subsequent cases show that the defense of entrapment is available only where the police or their agents manufactured the crime at issue by conduct likely, when objectively considered, to induce or instigate the commission of the crime by a person not ready and willing to commit it.

In *People v Larcinese,* 108 Mich App 511, 515; 310 NW2d 49 (1981), the Court explained that misconduct by police or their agents will not necessarily taint all similar or related transactions. Instead, the facts and circumstances of each case must be examined to determine whether a defendant was entrapped. We acknowledge that the entire course of the investigation is relevant in applying the objective test of entrapment, but reprehensible conduct by police and their agents, even where the conduct involves the same defendant, will not support a finding of entrapment unless it induced or instigated the crime at issue.

Defendant's reliance on *People v Weatherford,* 129 Mich App 359, 361; 341 NW2d 119 (1983), is misplaced. *Weatherford* contains merely an obscure statement that the trial court did not err by applying its findings as to entrapment to both defendants, because the charges against both defendants arose out of the same impermissible conduct on the part of the police and their agent. Nothing in the opinion suggests that it is authority for the broad proposition that reprehensible police conduct will taint an entire investigation

without regard to its relation to the defendant or the crime at issue. Judicial opinions must be construed according to and in the context of the facts presented in the opinion as the basis for the decision. See *Koschay v Barnett Pontiac, Inc*, 386 Mich 223, 230; 191 NW2d 334 (1971). We therefore must decline defendant's suggestion that we supplement the *Weatherford* opinion by reference to the trial court record in that case.

We acknowledge that there is significant evidence in this record which would support criminal charges against the undercover agent, including evidence that the agent used and distributed drugs on a substantial scale, furnished liquor to minors, educated suspected dealers in more sophisticated techniques, and persuaded suspects to try new and arguably more dangerous drugs. We further acknowledge that the record raises serious questions as to whether this investigation was organized in a way which presented reasonable safeguards against such abuses and whether the decision to employ a professional informant of this background was sound. Nevertheless, the defense of entrapment was not intended to be the remedy for any and all misconduct or neglect by police and their agents. The defense is only a remedy for conduct likely, when objectively considered, to induce or instigate the commission of the crime by a person not ready and willing to commit it.

Defendant complains that, before his contact with the undercover agent at issue, the police had no knowledge, information, or suspicion that defendant was a drug dealer. In *People v Reynolds*, 139 Mich App 471, 477-478; 362 NW2d 763 (1984), a case involving purchases of alcoholic liquor at various convenience stores by a minor undercover agent, this Court explained:

"Defendants and the lower courts also relied on the failure of the investigation to focus on any particular store and the absence before the purchases at issue of any reasonable suspicion or probable cause to believe that any of the stores involved were selling alcoholic liquor to minors. Other jurisdictions have rejected a requirement of probable cause or reasonable suspicion as a prerequisite to use of undercover agents. *Kadis v United States,* 373 F2d 370, 373 (CA 1, 1967); *United States v Catanzaro,* 407 F2d 998, 1001 (CA 3, 1969); *United States v Swets,* 563 F2d 989, 991 (CA 10, 1977); *Hardin v State,* 265 Ind 635; 358 NE2d 134 (1976); *State v Burrow,* 514 SW2d 585, 589 (Mo, 1974). Requirements of focus, probable cause, or reasonable suspicion cannot logically be derived from the objective test of entrapment, because such requirements have nothing to do with whether the police conduct was of a kind that could induce or instigate the commission of the crime by a person not ready and willing to commit it."

Cases on which defendant relies as authority for the contrary proposition are distinguishable. For example, in *People v Killian,* 117 Mich App 220, 223; 323 NW2d 660 (1982), the Court explained:

"We do not imply here that police must have probable cause to use an undercover agent or informer to make a drug buy. See *People v Wright (On Remand),* 99 Mich App 801, 817; 298 NW2d 857 (1980). We emphasize that police not only did not suspect defendant of involvement in cocaine sales; they had every reason to suspect that he was not involved. See *People v Turner, supra,* [390 Mich 7; 210 NW2d 336 (1973)] 23. See also *Reynolds v State,* 155 Ind App 226; 292 NE2d 290 (1973)."

Undercover operations need not be focused on a particular suspect; what *Killian* forbids is an operation designed to induce the commission of the crime by a person the police have reason to believe is not ready and willing to commit it.

Evidence which the circuit court regarded as

credible showed that this 20-year-old defendant met the undercover agent when he gave a friend a ride to the agent's apartment. The defendant entered the apartment with his friend, where the agent and several other people were present. Marijuana and beer supplied by the agent were shared by those present. After this meeting defendant and the agent were social acquaintances for about six weeks before the delivery at issue. Defendant visited the agent two or three times a week, and on most of these occasions shared marijuana provided by the agent.

The agent repeatedly asked defendant for assistance in finding drugs, and defendant had discussed the matter with his sources. On April 1, 1982, the agent introduced an undercover officer to defendant as a friend from another town, and the agent asked defendant to arrange for a purchase of a gram of PCP. After defendant made a telephone call, the agent and the officer drove defendant to a house on Stoney Point Road. The officer gave defendant $76, and defendant entered the house and purchased a gram of PCP for $70. To protect his source, defendant claimed that no one was home and had the agent take him to another location where he left the car and returned before delivering the PCP to the officer.

The evidence here does not support a conclusion that the delivery at issue was induced by the extraordinary type of exploitation of friendship which led to findings of entrapment in cases like *People v Turner, supra.* Although the delivery was first suggested by the agent, mere requests to sell contraband, even repeated requests, are not conduct likely, when objectively considered, to induce the commission of the crime by a person not ready and willing to commit it. See *People v Alford,* 405 Mich 570, 591; 275 NW2d 484 (1979). Defendant

points out that he was paid in advance and given a ride to pick up the drugs, but such trivial assistance is no more than might be expected in any transaction, and we cannot see how it supports a finding of entrapment under the objective test. Although evidence indicates that the agent shared with defendant drugs provided by the agent, we cannot see how such conduct could induce delivery of PCP by a person not ready and willing to deliver PCP.

The record here does not support a conclusion that the police or their agents manufactured defendant's crime by conduct likely, when objectively considered, to induce or instigate the commission of the crime by a person not ready and willing to commit it. On this record, the finding that defendant was not entrapped was not clearly erroneous.

II

Defendant points out that his preliminary examination was not conducted within 12 days of his arraignment in district court as required by MCL 766.1; MSA 28.919 and MCL 766.4; MSA 28.922. Defendant argues that the trial court therefore erred by declining to dismiss the charges against him without prejudice. In *People v Weston,* 413 Mich 371; 319 NW2d 537 (1982), the Court rejected arguments that delay in conducting the preliminary examination should not be regarded as reversible error unless the defendant can show prejudice resulting from the delay. However, the Court emphasized in *Weston,* 413 Mich 376, that the rule it stated was based on the fact of defendant's incarceration during the delay:

"A preliminary examination functions, in part, as a screening device to insure that there is a basis for

holding a defendant to face a criminal charge. A defendant against whom there is insufficient evidence to proceed should be cleared and released as soon as possible. The notion that a presumptively innocent defendant should remain in custody until a convenient time arrives for the magistrate to conduct the preliminary examination is exactly what the Legislature precluded in MCL 766.1; MSA 28.919.

"The failure to comply with the statute governing the holding of the preliminary examination entitles the defendant to his discharge." (Footnote omitted.)

Defendant here concedes that he was not incarcerated during the delay. Because the reason for the *Weston* rule does not apply here, because the delay in conducting the preliminary examination does not affect the integrity of the fact-finding process, and because application of the *Weston* rule here would merely require the prosecution to start again from the beginning without affecting the merits of the case, we conclude that the delay in conducting the preliminary examination does not entitle this defendant to any relief.

Affirmed.

MacKenzie, P.J., concurred.

R. M. Maher, J. *(dissenting in part)*. I respectfully dissent from my colleagues' holding that the 12-day rule, set forth in MCL 766.4; MSA 28.922 and *People v Weston*, 413 Mich 371; 319 NW2d 537 (1982), does not apply where an accused awaiting his or her preliminary examination is not in physical custody. I note first that there is no such exception in the language of MCL 766.4; MSA 28.922 and that the *only* exception to the 12-day rule set forth in that statute is the following exception found in MCL 766.7; MSA 28.925:

"A magistrate may adjourn a preliminary examina-

tion for a felony to a place in the county as the magistrate deems necessary. The accused may in the meantime be committed either to the county jail or to the custody of the officer by whom he was arrested or to any other officer; or, unless he is charged with treason or murder, he may be admitted to bail. An adjournment, continuance, or delay of a preliminary examination shall not be granted by a magistrate except for good cause shown. A magistrate shall not adjourn, continue, or delay the examination of any cause by the consent of the prosecution and accused unless in his discretion it shall clearly appear by a sufficient showing to the magistrate to be entered upon the record that the reasons for such consent are founded upon strict necessity and that the examination of the cause cannot then be had, or a manifest injustice will be done. An action on the part of the magistrate in adjourning or continuing any case, shall not cause the magistrate to lose jurisdiction of the case."

This statute explicitly recognizes the possibility that the accused might have been admitted to bail but nevertheless limits the magistrate's authority to adjourn, continue, or delay the preliminary examination "except for good cause shown". In addition, even where both the prosecution and the accused have agreed to such a delay, the magistrate is not to grant the delay "unless in his discretion it shall clearly appear by a sufficient showing to the magistrate to be entered upon the record that the reasons for such consent are founded upon strict necessity and that the examination of the cause cannot then be had, or a manifest injustice will be done". Finally, I do not agree that the Supreme Court in *Weston* intended the 12-day rule to be applied only where the accused is incarcerated. The Supreme Court did mention the fact that the accused in that case had been incarcerated, but it did so in response to a series of Court of Appeals cases which had repeat-

edly applied the principle that noncompliance with MCL 766.4; MSA 28.922 is not error requiring reversal unless the defendant could show prejudice from the delay. In context, the Supreme Court was showing that the very fact of incarceration constituted prejudice. However, nowhere in the opinion did the Supreme Court state that such prejudice must exist before a violation of the 12-day rule would require reversal of a conviction—instead, the Supreme Court rejected the Court of Appeals principle of "no prejudice/no reversible error". I believe that the majority has, by requiring incarceration, revived the former "no prejudice/no reversible error" rule.