PEOPLE v STEELE

Docket No. 82502. Submitted December 11, 1985, at Grand Rapids.—
     Decided April 9, 1986. Leave to appeal applied for.

     Defendant, Chester Steele, was convicted of two counts of delivery
     of lysergic acid diethylamide, Luce Circuit Court, William F.
     Hood, J. On the day prior to trial defendant moved to dismiss,
     alleging entrapment. At the hearing on the entrapment motion,
     defendant and his wife both testified. The defendant testified to
     the following. A friend of a friend brought David Stearns, an
     undercover Michigan State Trooper, to the defendant's home.
     The trooper was introduced to the defendant as a drug dealer
     from Sault Ste. Marie. The defendant stated that Stearns
     brought beer to the defendant's home. The defendant drank the
     beer even though he was an alcoholic and had not had a drink
     for four years. Stearns asked him if he could buy some "acid".
     Defendant said that he knew nothing about acid. Stearns
     returned to the defendant's home several times trying to buy
     drugs. Finally, the defendant offered to take Stearns to a
     marijuana dealer in Escanaba to "get him out of the house".
     Stearns drove himself and defendant to Escanaba to purchase
     marijuana. Up until that time, defendant claimed that he had
     only procured marijuana and other drugs for his own use.
     Defendant claimed that Stearns was the only one who had
     asked him to procure LSD and large quantities of marijuana.
     Stearns made these requests after giving defendant marijuana,
     beer, or "funny pills". Defendant, believing that Stearns was
     running the drugs into Canada, decided that he would help
     Stearns obtain drugs. Defendant purchased some acid and gave
     it to Stearns. Defendant testified to purchasing other drugs for

REFERENCES

Am Jur 2d, Criminal Law §§ 162, 202-209, 488, 890-900.
Am Jur 2d, Drugs, Narcotics, and Poisons §§ 16, 17, 21, 40-48.
Adequacy of defense counsel's representation of criminal client
     regarding entrapment defense. 8 ALR4th 1160.
Availability in state court of defense of entrapment where accused
     denies committing acts which constitute offense charged. 5
     ALR4th 1123.
See also the annotations in the ALR3d/4th Quick Index under
     Lesser Offenses.

Stearns. Defendant's wife corroborated his testimony in part by stating that defendant had not had a drink in four years. At the time that Stearns had brought beer into defendant's home, neither defendant nor his wife had told him that defendant had a drinking problem. Defendant's wife testified that, although defendant at first refused Stearns' offer of beer, he accepted it after Stearns offered it "a couple [of] more times". Defendant's wife also testified that she and defendant had known Stearns for one month before the trip to Escanaba and two months before defendant procured any mescaline for Stearns. Finally, defendant's wife testified that defendant was merely a user and possessor of drugs and he was not a dealer until he met Stearns. The trial court, following the hearing, dismissed defendant's motion. At trial, the court refused to instruct the jury on the misdemeanor offenses of possession of LSD and the use of LSD. Defendant appealed. *Held:*

1. Michigan has adopted an objective test for entrapment which focuses upon the conduct of the police and requires that charges against a defendant be dismissed where the government agent's involvement in criminal activity goes beyond the mere offering of an opportunity to commit the offense and becomes of a kind that could induce or instigate the commission of a crime by one not ready and willing to commit it regardless of the character or propensities of the particular person involved. The issue of entrapment is for the court to decide after an evidentiary hearing held outside the jury's presence; the defendant has the burden of showing entrapment by a preponderance of the evidence. The trial court's finding that defendant was not entrapped was not clearly erroneous. The facts that Stearns requested defendant's assistance in obtaining LSD, drove defendant to the pick-up site, paid for the LSD and shared it with defendant are not dispositive.

2. The court properly refused to submit the entrapment issue to the jury.

3. The decision to grant or deny a requested jury instruction on a lesser included offense will be reversed on appeal only upon a finding of a clear abuse of discretion. An instruction on a lesser included misdemeanor is appropriate only where: (1) there is a proper request; (2) there is an appropriate relationship between the misdemeanor and the charged offense; (3) the requested misdemeanor instruction is supported by a rational view of the evidence adduced at trial; (4) the defendant has adequate notice, if the prosecutor requests the instruction; and (5) the requested instruction does not result in undue confusion or some other injustice. Possession and use of LSD are not

necessarily lesser included offenses of delivery of LSD. However, under the testimony adduced by defendant, they were cognate lesser included offenses and instructions on them should have been given.

Reversed and remanded.

1. CRIMINAL LAW — ENTRAPMENT.

Michigan has adopted an objective test for entrapment which focuses upon the conduct of the police and requires that charges against a defendant be dismissed where the government agent's involvement in criminal activity goes beyond the mere offering of an opportunity to commit the offense and becomes of a kind that could induce or instigate the commission of a crime by one not ready and willing to commit it regardless of the character or propensities of the particular person involved.

2. CRIMINAL LAW — ENTRAPMENT — TRIAL — BURDEN OF PROOF.

The issue of entrapment is for the court to decide after an evidentiary hearing held outside the jury's presence; the defendant has the burden of showing entrapment by a preponderance of the evidence.

3. CRIMINAL LAW — ENTRAPMENT — APPEAL — COURT RULES.

A trial court's findings on the issue of entrapment will not be reversed unless clearly erroneous (MCR 2.163[c]; GCR 1963, 517.1).

4. CRIMINAL LAW — JURY INSTRUCTIONS — LESSER INCLUDED OFFENSES — MISDEMEANORS.

The decision to grant or deny a requested jury instruction on a lesser included offense will be reversed on appeal only upon a finding of a clear abuse of discretion; an instruction on a lesser included misdemeanor is appropriate only where: (1) there is a proper request; (2) there is an appropriate relationship between the misdemeanor and the charged offense; (3) the requested misdemeanor instruction is supported by a rational view of the evidence adduced at trial; (4) the defendant has adequate notice, if the prosecutor requests the instruction; and (5) the requested instruction does not result in undue confusion or some other injustice.

5. CRIMINAL LAW — LESSER INCLUDED OFFENSES — NECESSARILY LESSER INCLUDED OFFENSES.

A necessarily lesser included offense is one where the greater offense could not be committed without committing the lesser offense.

6. CRIMINAL LAW — LESSER INCLUDED OFFENSES — COGNATE OFFEN-
      SES.

   Cognate offenses share several elements with and are of the same
   class or category as the greater offense, but they also contain
   some elements not found in the higher offense; for the lesser
   offense to be a cognate offense, the elements shared by the
   lesser offense and by the greater offense must coincide in the
   harm to the societal interest to be protected.

7. CONTROLLED SUBSTANCES — DELIVERY — POSSESSION — LESSER
      INCLUDED OFFENSES.

   Possession of a controlled substance is not a necessarily lesser
   included offense of delivery of a controlled substance but it may
   be a cognate lesser included offense where the evidence shows
   defendant to have been in possession of the controlled sub-
   stance.

8. CONTROLLED SUBSTANCES — LESSER INCLUDED OFFENSES — COGNATE
      OFFENSES — DELIVERY — USE — POSSESSION.

   Both use and possession of a controlled substance can be classified
   as cognate offenses of the offense of delivery of a controlled
   substance; the common element in all three offenses is that the
   defendant did something unlawful with a controlled substance
   knowing it to be a controlled substance; the intent is the
   protection of society from drug abuse; each requires proof of an
   element that the others do not.

9. CRIMINAL LAW — LESSER INCLUDED OFFENSES — JURY INSTRUC-
      TIONS — COGNATE OFFENSES.

   A jury instruction on a cognate lesser included offense need not
   be given even if the evidence supports it where the factual
   element distinguishing the greater offense from the lesser is
   not in dispute.

10. JURY — FACT-FINDING.

   The jury, because it is the sole judge of all the facts, can choose,
   without any apparent logical basis, what to believe and what to
   disbelieve.

11. CRIMINAL LAW — JURY INSTRUCTIONS — LESSER INCLUDED OFFEN-
      SES — APPEAL — HARMLESS ERROR.

   The harmless error rule applies where the trial court failed to
   give a requested instruction on a cognate lesser included of-
   fense; the test is whether the failure to give the instruction was
   prejudicial; the failure is prejudicial where it foreclosed the
   jury's convicting defendant in accordance with his own testi-
   mony, evidence and theory.

*Frank J. Kelley,* Attorney General, *Louis ·J. Caruso,* Solicitor General, *James P. Hoy,* Prosecuting Attorney, and *Michael A. Nickerson,* Assistant Attorney General, for the people.

State Appellate Defender (by *P. E. Bennett),* for defendant on appeal.

Before: ALLEN, P.J., and R. B. BURNS and N. J. KAUFMAN,* JJ.

PER CURIAM. On October 10, 1984, following a jury trial, defendant, Chester Steele, was convicted of two counts of delivery of lysergic acid diethylamide (LSD). MCL 333.7401, subds (1) and (2)(b); MSA 14.15(7401), subds (1) and (2)(b). Defendant was sentenced to from two to seven years' imprisonment on each count; his sentences were to run concurrently. The defendant was given credit for 27 days served. The defendant now appeals as of right.

On the day before trial, defendant brought a motion to dismiss the charges against him on the ground that he was entrapped by an undercover police officer. At the hearing on the entrapment motion, defendant and his wife both testified. The defendant testified to the following. A friend of a friend brought David Stearns, an undercover Michigan State Trooper, to the defendant's home. The trooper was introduced to the defendant as David Masters, a drug dealer from Sault Ste. Marie. The defendant stated that Stearns brought beer to the defendant's home. The defendant drank the beer even though he was an alcoholic and had not had a drink for four years. The defendant also stated that Stearns asked him if he could buy some

---

* Former Court of Appeals judge, sitting on the Court of Appeals by assignment.

"acid". In response to Stearns' inquiry, the defendant said that he knew nothing about "acid". Stearns returned to the defendant's home several times trying to buy drugs. Finally, the defendant offered to take Stearns to a marijuana dealer in Escanaba to "get him [Stearns] out of the house". Stearns drove himself and defendant to Escanaba to purchase marijuana. Up until that time, defendant claimed that he had only procured marijuana and other drugs for his own use. Defendant claimed that Stearns was the only one who had asked him to procure LSD and large quantities of marijuana. Stearns made these requests after giving defendant marijuana, beer, or "funny pills". Defendant, believing that Stearns was running the drugs into Canada, decided that he would help Stearns obtain drugs and thereby rid his town of them. Defendant purchased some "acid". Soon thereafter, Stearns came over to defendant's house and defendant told him "[H]ey, you're just the man I want to see * * * [I] got the stuff for you, get it out of here".

After that initial purchase, defendant described his transactions with Stearns as follows:

"But after that [occasion], I went with him. I said okay, I know where to get it [the drugs]. You park here, give me the money, I'll go get it for you, I'll come back to the truck, and away we'd go."

On cross-examination, defendant described his transactions with Stearns in the same manner.

"[Stearns] told me to go get it [the drugs], and I says okay, this is how much it is. Or like the one time we went over there, stopped, he says, well, go see how much it is. I says I know how much it is. It was four fifty, I believe. I'm not positive, but I says, I know. He says, well, go see anyway.

"I don't know what the hell he wanted me to do that for, but anyway I went over there, found out, came back, found out there was only—I think there was six of them. And I says she wanted four fifty apiece. So that's what he got. I went back, he give me the money, went back to the house, got them. And then he took me home * * *."

Nonetheless, defendant maintained that the only reason he became involved in purchasing drugs for Stearns was that he "kept coming to my house and telling me that he was taking it to Canada, fool-proof plan, no problem".

Defendant's wife corroborated his testimony in part by stating that defendant had not had a drink in four years. At the time that Stearns had brought beer into defendant's home, neither defendant nor his wife had told him that defendant had any drinking problems. Defendant's wife testified that, although defendant at first refused Stearns' offer of beer, he accepted it after Stearns offered it "a couple [of] more times". Defendant's wife also testified that she and defendant had known Stearns for one month before the trip to Escanaba and two months before defendant procured any mescaline for Stearns. Finally, defendant's wife testified that defendant was merely a user and possessor of drugs and he was not a dealer until he met Stearns.

Following the testimony of defendant's wife, the prosecutor moved to have defendant's entrapment motion dismissed because there was no conduct on the part of the police that would be considered entrapment. The prosecutor argued that there was no police conduct which would induce the commission of a crime by one unwilling to commit it and, therefore, there was no entrapment. On the other hand, defendant argued that he had been en-

trapped because Stearns had induced him to deal an area (procuring acid) when he had previously procured marijuana and other drugs for his own personal use. The trial court granted the prosecutor's motion to dismiss the entrapment motion.

The defendant's first claim is that the trial court erred in finding that defendant was not entrapped where the defendant claimed that he was merely a possessor and user of controlled substances before he met the undercover officer.

In *People v Turner,* 390 Mich 7; 210 NW2d 336 (1973), the Michigan Supreme Court adopted the objective test for entrapment. The objective test focuses on the conduct of the police. The test requires that a trial court dismiss the charges against a defendant when the government agents' involvement in criminal activities goes beyond the mere offering of an opportunity to commit the offense. The agents' conduct must be of a kind that could induce or instigate the commission of a crime by one not ready and willing to commit it regardless of the character or propensities of the particular person induced. *Turner, supra.*

In *People v D'Angelo,* 401 Mich 167, 173-174; 257 NW2d 655 (1977), the Michigan Supreme Court held that the entrapment issue was for the judge to decide and not for the jury. The Court determined that, when the issue of entrapment was raised, the trial court should hold an evidentiary hearing outside of the jury's presence to decide the issue. At the hearing, the defendant has the burden of proving that he was entrapped by a preponderance of the evidence. *D'Angelo, supra,* p 182.

In this case, the trial court followed *D'Angelo, supra,* by holding a separate evidentiary hearing on entrapment. After hearing all the testimony,

the trial court granted the prosecutor's motion for dismissal of the entrapment motion.

In granting the dismissal, the trial judge applied the objective test for entrapment. The trial judge focused on the conduct of the police. The trial judge found:

"First of all, that * * * the police officer, Stearns, did seek out the introduction, did seek out the defendant to make his acquaintance, and that this was in the course of Officer Stearns' police activities in the investigation of controlled substance offenses.

"Further, that Officer Stearns did seek to ingratiate himself with the defendant. He did this by repeated calls at the defendant's home, he brought beer to the defendant's home, offered the beer to the defendant, and smoked marijuana with the defendant at the defendant's home.

"Officer Stearns also frequently brought up the subject of the purchase of marijuana and 'acid' in substantial quantities. The officer also indicated and explained that the quantities were desired for export to Canada.

"The officer on several occasions transported the defendant to the neighborhood of places where the defendant made purchases of marijuana for the officer."

The trial judge further found that there was no evidence that Stearns knew "that the defendant was an alcoholic" and played on this weakness and that "there was no inducing of the defendant to have contact with any controlled substance that he had not had contact with before".

On the entrapment issue, the trial court's finding will not be reversed unless it is clearly erroneous. *D'Angelo, supra,* p 183. See also, MCR 2.613(C), formerly GCR 1963, 517.1. In our opinion, the trial court's finding on the issue of entrapment was not clearly erroneous.

Defendant's reliance on *People v LaBate,* 122

Mich App 644; 332 NW2d 555 (1983), and *People v Killian,* 117 Mich App 220; 323 NW2d 660 (1982), *lv den* 414 Mich 944 (1982), is misplaced.

Unlike the defendants in *Killian* and *LaBate,* the defendant here did not demonstrate that the police knew that he was only a user of drugs. Although the defendant and his wife both testified that the defendant was only a possessor or user of drugs, the defendant failed to show that the police believed that he was only a user or possessor. Thus, *LaBate* and *Killian* are distinguishable.

In this case, the defendant also did not offer evidence that the officer knew that he was a reformed alcoholic. The trial judge did not err when he found that Stearns did not know of the defendant's drinking problem and, therefore, he could not have used it to his advantage.

The trial judge also did not clearly err in disregarding the marijuana transaction as evidence of a continuing course of entrapment. The defendant was not charged with a marijuana offense. Instead, the trial judge properly focused on the issue of the LSD deliveries. Moreover, even if the trial judge had accepted the defendant's testimony that the marijuana transaction was tainted, he could have found that the taint was purged because there was at least one month between the marijuana transaction and the LSD transaction with which the defendant was charged.

In the LSD transactions, Stearns only made himself known as one who would buy LSD. Stearns merely afforded the defendant an opportunity to commit the crime. *People v Reynolds,* 139 Mich App 471, 476; 362 NW2d 763 (1984); *People v Alford,* 405 Mich 570; 275 NW2d 484 (1979). The defendant was the one who sought out Stearns for the initial delivery. Defendant's involvement in the transactions was the result of his belief that

he would not be caught and his belief that Stearns was not a "narc".

These deals were not much different than the deals in *People v Crawford,* 143 Mich App 348; 372 NW2d 550 (1985). In *Crawford,* the undercover officer repeatedly asked the defendant to arrange for the purchase of PCP. The defendant arranged the deal and the officer drove the defendant to the purchase point. The officer gave the defendant the money and the defendant went by himself to purchase the PCP in order to protect his source. This Court found that even repeated requests for contraband did not constitute entrapment. Moreover, this Court held that the fact that the officer drove the defendant to the pick-up site and paid for the drugs in advance was merely "trivial assistance". 143 Mich App 357. Finally, this Court found that even the officer's sharing of drugs with the defendant was not enough "to induce or instigate the commission of a crime by a person not ready and willing to commit it". *Id.*

Here, Stearns requested the defendant's assistance in obtaining LSD. Stearns also drove the defendant to the pick-up site and paid for the LSD. Afterwards, Stearns shared the LSD with the defendant at the defendant's request. This case is similar to *Crawford, supra.* There was no error in finding that the defendant was not entrapped and the trial court properly dismissed the entrapment motion.

Furthermore, under *D'Angelo, supra,* the court did not err when it refused to submit the entrapment issue to the jury.

The defendant's next claim is that the trial court abused its discretion in refusing to instruct the jury on the lesser offenses of possession and use of LSD.

Delivery of LSD is a felony punishable by im-

prisonment for not more than seven years. MCL 333.7401, subds (1) and (2)(b); MSA 14.15(7401), subds (1) and (2)(b). Possession of LSD is a misdemeanor punishable by not more than one year in prison. MCL 333.7403, subds (1) and (2)(c); MSA 14.15(7403), subds (1) and (2)(c). The use of LSD is also a misdemeanor, but punishable by imprisonment for not more than six months. MCL 333.7405, subds (1) and (2)(c); MSA 14.15(7405), subds (1) and (2)(c).

The use of misdemeanor instructions is explained in *People v Baskin,* 145 Mich App 526, 541-542; 378 NW2d 535 (1985):

"The decision to grant or deny a requested instruction on a lesser included offense will be reversed on appeal only upon a finding of a clear abuse of discretion. *People v Stephens,* 416 Mich 252, 265; 330 NW2d 675 (1982). In general, '[w]henever an adequate request for an appropriate misdemeanor instruction is supported by a rational view of the evidence adduced at trial, the trial judge shall give the requested instruction unless to do so would result in a violation of due process, undue confusion, or some other injustice.' *People v Stephens, supra,* p 255.

"The following conditions must be presented for the instruction on a misdemeanor to be appropriate: (1) there must be a proper request; (2) there must be an appropriate relationship between the charged offense and the requested misdemeanor; (3) the requested misdemeanor instruction must be supported by a rational view of the evidence adduced at trial; (4) if the prosecutor requests the instruction, the defendant must have adequate notice of it; and (5) requested instructions must not result in undue confusion or some other injustice. *People v Stephens, supra,* pp 261-265."

In the instant case, defendant requested two misdemeanor instructions. The trial court refused to give the instructions after finding that neither

charge was supported by a rational view of the evidence and the instructions would, therefore, confuse the jury.

*Stephens, supra,* required "an appropriate relationship between the charged offense and the requested misdemeanor". In clarifying the type of relationship that must be shown, the Court stated,

"there must also be an 'inherent' relationship between the greater and lesser offense, *i.e.,* they must relate to the protection of the same interests, and must be so related that in the general nature of these crimes, though not necessarily invariably, proof of the lesser offense is necessarily presented as part of the showing of the commission of the greater offense." *Stephens, supra,* p 262, quoting *United States v Whitaker,* 144 US App DC 344, 349; 447 F2d 314 (1971).

The Court went on to say,

"[t]his requirement is also familiar to our jurisprudence. In *People v McDonald,* 9 Mich 150, 153 (1861), the Court found the offense of assault, or assault and battery, 'included' within an indictment charging felonious assault. In *People v Ora Jones,* 395 Mich 379, 390; 236 NW2d 461 (1975), the Court referred to 'the common purpose of the statutes', which protected the same 'societal interest'." *Stephens, supra,* p 262.

In *People v Ora Jones,* 395 Mich 379; 236 NW2d 461 (1975), the Court distinguished two types of lesser included offenses. The Court found that there were necessarily lesser included offenses and cognate lesser included offenses. A necessarily lesser included offense is one where the greater offense could not be committed without committing the lesser offense. 395 Mich 387. For example, robbery cannot be committed without committing a larceny. Cognate offenses on the other hand share several elements with and are of the same

class or category as the greater offense, but they also contain some elements not found in the higher offense. 395 Mich 387. To find that the lesser offense is a cognate offense, the elements shared by the lesser offense and by the greater offense must coincide in the harm to the societal interest to be protected. 395 Mich 390.

In the instant case, use of LSD is not a necessarily lesser included offense of delivery of LSD. Furthermore, a prosecutor need not prove that the defendant possessed LSD in order to prove that the defendant delivered LSD. However, possession of a controlled substance may be a lesser included (cognate) offense of unlawful delivery when the state's evidence shows that the defendant was in possession of the controlled substance. *People v Kamin,* 405 Mich 482, 497; 275 NW2d 777 (1979).

Both offenses, use and possession, would be classified as cognate offenses rather than necessarily included lesser offenses of the offense of delivery. The common element in all three offenses is that the defendant did something unlawful with a controlled substance, here LSD, knowing it to be LSD. This common element is aimed at the same societal interest. Each is designed to protect society from the effects of drug abuse. Each crime also requires proof of an element that the others do not. One requires delivery of LSD; one, use of LSD; and one, possession of LSD. Thus, the offenses are cognate offenses and the second condition of *Stephens* is also met because there is an appropriate relationship between the charged offense and the requested misdemeanors. *Stephens, supra,* p 262.

As a third element of *Stephens,* the defendant must show that the requested misdemeanor instruction is "supported by a rational view of the evidence adduced at trial". *Stephens, supra,* p 262. The Court stated,

"proof on the element or elements differentiating the two crimes must be sufficiently in dispute so that the jury may consistently find the defendant innocent of the greater and guilty of the lesser included offense." 416 Mich 263.

The Court further noted,

"a lesser offense charge is not proper where, on the evidence presented, the factual issues to be resolved by the jury are the same as to both the lesser and greater offenses. *Berra v United States* [351 US 131; 76 S Ct 685; 100 L Ed 1013 (1956)]; *Sparf v United States,* 156 US 51, 63-64; 15 S Ct 273; 39 L Ed 343 (1895). * * * A lesser-included offense instruction is only proper where the charged greater offense instruction requires the jury to find a disputed factual element which is not required for conviction of the lesser-included offense. *Berra v United States, supra; Sparf & United States, supra,* pp 63, 64. *Sansone v United States,* 380 US 343, 349-350; 85 S Ct 1004; 13 L Ed 2d 882 (1965)." 416 Mich 263.

Consequently, even if evidence at trial supports the lesser included offense instruction, it need not be given if the factual element of the greater offense which distinguishes it from the lesser offense is not in dispute.

This Court interpreted the third element of *Stephens* in *People v Bragdon,* 142 Mich App 197; 369 NW2d 208 (1985). This Court stated in obiter dictum that the trial court properly refused to give an instruction on possession of marijuana when the defendant was charged with delivery of marijuana because there was no disputed factual element differentiating the offense of delivery from the offense of possession. *Bragdon, supra,* p 200. In *Bragdon,* the defendant was charged with delivering 0.7 grams of hashish to an undercover officer. The defendant claimed that, although he had de-

livered the substance to the officer, he believed that the substance was marijuana and not hashish. The defendant argued that he was not a dealer of marijuana because the amount he had sold was so small. The defendant also argued that, if anything, the jury should find him guilty of possession of marijuana.

The instant case is similar. The prosecutor had to show that defendant knowingly delivered a substance which he knew to be LSD. Defendant admitted that he delivered drugs to Stearns, however, defendant believed that he had delivered mescaline and not LSD. Arguably, then, the fact in dispute is not whether defendant delivered, but the nature of the drug which was delivered. The nature of the drug is not the factor which distinguishes delivery of LSD from use or possession of LSD. Therefore, because the factual issue to be resolved in all three charges was the type of drug that defendant possessed and not whether defendant delivered, used, or possessed LSD, the third condition of *Stephens* was not met.

The trial judge applied this analysis and found that there was no "dispute as to an element that differentiates delivery from possession". In this case, defendant took the stand and admitted that he delivered drugs to Stearns. Defendant merely denied that the drug he gave Stearns was LSD. At trial, defendant also admitted that he possessed and used mescaline. The fact in dispute then was the type of drug that defendant delivered and not the issue of delivery itself. Because delivery was not in dispute, the trial judge believed that he did not have to instruct the jury on the lesser included offenses.

In proving delivery of LSD, however, the prosecutor must show: (1) that the defendant transferred the substance to another; (2) that the defen-

dant intended to transfer the substance to another; and (3) that the defendant knew the substance was LSD. See CJI 12:2:03. Thus, the knowledge of the substance was in dispute and, therefore, delivery of LSD would have been in dispute. Because delivery is an element which distinguishes delivery of a controlled substance from possession or use of the controlled substance, the trial court erred in refusing to instruct the jury on possession and use of LSD.

Moreover, even if the trial judge believed that delivery was "undisputed", the jury was not bound by his determination. In *People v Chamblis,* 395 Mich 408, 421; 236 NW2d 473 (1975), *reh den* 396 Mich 976 (1976), the Michigan Supreme Court stated that the jury has an "absolute right to disbelieve all the undisputed evidence". The Court added:

"[b]ecause the jury is the sole judge of all the facts, it can choose, without any apparent logical basis, what to believe and what to disbelieve. What may appeal [sic, appear?] to the judge as 'undisputed' need not be believed by a jury." Emphasis changed. *Chamblis, supra,* p 420.

Therefore, the jury could have chosen to disbelieve defendant's admission of delivery and still could have found that defendant possessed or used LSD, even though defendant believed that the drug which he had used or possessed was mescaline. See and compare *People v Boles,* 420 Mich 851; 358 NW2d 894 (1984), *rev'g* 127 Mich App 759 (1983).

Judge MAHER dissented in part in *Bragdon, supra.* He believed that the possession of marijuana instruction should have been given under *Stephens,* reasoning that, in *Stephens,* the Su-

preme Court specifically refused to overrule *People v Kamin, supra. Bragdon, supra,* p 201, citing *Stephens, supra,* p 258, fn 9. Judge MAHER concluded that this Court was bound by *Kamin* and, therefore, "where a defendant who is charged with delivery of a controlled substance is shown by the state's evidence to have been in possession of the substance, the trial court must give a requested possession instruction". *Bragdon, supra,* pp 201-202 (MAHER, J., dissenting). Consequently, Judge MAHER would have had the trial judge give the possession charge if it was requested. *Bragdon, supra,* p 202 (MAHER, J., dissenting).

A closer reading of *Stephens* shows that the Michigan Supreme Court meant to leave untouched its decisions that "require certain lesser included felony instructions even if such instructions are not supportable by any rational view of the evidence * * *". *Stephens, supra,* p 258, fn 9 (emphasis added). One of these decisions was *Kamin.* However, the part of *Kamin* which was left untouched by *Stephens* was the part in which the Court held that the trial court erred when it failed to instruct on the cognate offense of larceny from a person when the defendant was charged with armed robbery. *Kamin, supra,* pp 500-501. Nonetheless, we agree with Judge MAHER and would find that, where the state presents evidence that defendant had been in possession of the substance in question, the jury should receive the requested possession instruction.

Here, defendant argued in his opening statement that he was a user or possessor of drugs, but not a dealer. At trial, both Officer Stearns and defendant testified that defendant possessed a substance which the officer called LSD, but which defendant believed was mescaline, before delivering the substance to the officer. Officer Stearns

also testified that LSD is known by many street names, including mescaline. Thus, there was sufficient evidence for the jury to find defendant guilty of possession of LSD. Moreover, because knowledge that the substance to be delivered was LSD is an element of the crime of delivery, defendant could argue that delivery was in dispute and that, therefore, if the jury chose to disbelieve that defendant knowingly delivered LSD, it could still find that he possessed it. Consequently, although possession is a misdemeanor rather than a felony, the trial judge should have given the requested jury instruction because the jury could have consistently convicted defendant of possession of LSD and acquitted him of delivery of LSD. *Stephens, supra.*

On the facts here, use of LSD is also a cognate lesser offense of delivery of LSD. Therefore, defendant would have been entitled to the instruction on use of LSD because the jury could have found defendant guilty of use and not guilty of delivery. Defendant admitted that he had used mescaline. Defendant's wife also stated that defendant used mescaline. Trooper Stearns testified that LSD was also known by the street name mescaline. Therefore, there was enough factual evidence for the jury to believe defendant was guilty of use of LSD but not of its delivery. Hence, the instructions on the cognate offenses of use and possession of LSD were supported by the evidence and the trial judge should have given them to the jury.

The fourth element of *Stephens* is not involved in this case because the prosecutor did not ask for the lesser included offense instruction. *Stephens, supra,* p 264.

The fifth element of *Stephens* is that the requested instructions do not result in undue confusion for the jury. *Stephens, supra,* p 264. The trial court must decide in its discretion whether to give

a lesser included offense instruction. Here, the trial judge stated that he believed that the requested instructions would confuse the jury. We believe that, where evidence was introduced on the possession and use of LSD offenses, the jury would not have been confused by such an instruction. Moreover, the Michigan Supreme Court has held that "[w]hen a defendant admits criminal involvement, but not to the extent of the charged offense, the jury should have the 'freedom to act according to the evidence'". *People v Stephens,* 407 Mich 402, 406; 285 NW2d 664 (1979). Consequently, the trial court should have given the requested instructions to the jury.

In *People v Daniel Meyers (On Remand),* 124 Mich App 148; 335 NW2d 189 (1983), this Court held that when the trial court fails to instruct on a cognate lesser included offense the harmless error rule is applicable. See also, *People v Rochowiak,* 416 Mich 235, 248-249; 330 NW2d 669 (1982), *reh den* 417 Mich 1106 (1983). This Court went on to hold that the test is whether the failure to give the requested instruction was prejudicial. *Meyers, supra,* p 160. In *People v Richardson,* 409 Mich 126, 141; 293 NW2d 332 (1980), the Michigan Supreme Court held that a trial judge's refusal to instruct on cognate lesser offenses was to foreclose the jury's option to convict the defendant in accordance with his own testimony, evidence and theory. Because the jury was, therefore, denied the freedom to act according to the evidence and, moreover, was deprived of any option to convict consistently with the defendant's testimony, evidence and theory, the trial court's refusal to give the properly requested lesser offense instructions was prejudicial error. *Richardson, supra,* p 141.

Here, the trial court did not instruct the jury on any lesser included offenses. The trial court's re-

fusal to instruct on the lesser included offenses of possession and use, where the instructions related to the degree of the defendant's culpability and were compatible with his theory of defense, deprived the jury of any option to convict consistently with the defendant's testimony, evidence and theory. Therefore, the trial court's refusal to give the properly requested lesser included offense instructions was prejudicial error. *Richardson, supra,* p 141.

As we have found it necessary to reverse and remand for a new trial, we need not address defendant's remaining issue.

Reversed and remanded for a new trial.