*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

JAYNEEL RAVINDRA JADE,

Defendant-Appellant.

FOR PUBLICATION
October 28, 2024
12:03 PM

No. 365951
Van Buren Circuit Court
LC No. 2022-023839-FH

Before: BORRELLO, P.J., and MURRAY and LETICA, JJ.

BORRELLO, P. J.

Defendant appeals by delayed leave granted[1] his plea-based conviction of accosting a child for immoral purposes, MCL 750.145a, arguing that police officers entrapped him with an underhanded bait-and-switch sex sting. For the reasons set forth in this opinion, we affirm.

## I. BACKGROUND

During an undercover operation in April 2022, the Van Buren County Sheriff's Department and Genesee County Sheriff's Department utilized the Amsterdam-based website "Skip the Games." Testimony during the evidentiary hearing characterized the website as an "escort service" catering to adults. The website claimed to prohibit minors and required users to be at least 19 years old to post, but it lacked an age-verification process.

Deputies posted an advertisement on Skip the Games. The advertisement was created to appear to depict a 20-year-old "female escort," and it listed various sexual activities that "this service provider may enjoy." Furthermore, the advertisement also included photographs of an undercover officer who, according to the parties' stipulated facts, was actually almost 19 years old, as well as a photograph that stated "I [heart] DILFs," which stands for "dad[]s I'd like to F."

---

[1] *People v Jade*, unpublished order of the Court of Appeals, entered October 16, 2023 (Docket No. 365951).

Certain deputies were located in a hotel room and posed as the escort to answer inquiries responding to the advertisement. Defendant engaged in the following text message conversation with the deputies posing as the escort:[2]

[*Defendant*]: Hey there[*Decoy*]: Hi

[*Defendant*]: How are you doing?[*Defendant*]: How long are you visiting Paw Paw?

[*Decoy*]: Just fonight

[*Decoy*]: Tonight[*Defendant*]: Is that you too with the 517 phone number?[*Defendant*]: Are you free this afternoon?[*Decoy*]: Yup

[*Decoy*]: Yup its me[*Decoy*]: Lol[*Defendant*]: Where would we meet at?[*Decoy*]: In Paw Paw[*Decoy*]: Are you cool with younger chicks?

[*Defendant*]: I am[*Decoy*]: Ok cool cuz I'm 15

[*Defendant*]: Got to be 16[*Decoy*]: Nope[*Defendant*]: I'm cool if you are older than 15 and want to role play to be 15[*Decoy*]: Sorry I'm Actually 15[*Decoy*]: Like real life lol

[*Defendant*]: Can we talk on the phone?[*Decoy*]: Yup I will call ya[*Defendant*]: Ok[*Decoy*]: So ur cool with $80 to fuck and get a bj

[*Defendant*]: Hey

[*The Decoy*]: Hey

[*Defendant*]: Would you like to go out to eat instead of having instant noodles?

[*Decoy*]: I really just wanna fuck and make some cash

[*Defendant*]: Can you come down to the back entrance? I'm here[*Decoy*]: Ok hang on

Defendant also engaged in an unrecorded phone conversation with the decoy. Furthermore, defendant conducted a reverse Google search of the decoy's phone number, yielding information indicating that the number was registered to a 34-year-old unmarried woman with no

---

[2] Detective Sharon Van Dam, with the Van Buren County Sheriff's Department, testified at the evidentiary hearing that defendant was not a target for law enforcement until he responded to the advertisement. Before defendant responded to the advertisement, Van Dam did not know anything about him.

children.[3] Defendant entered a hotel room where an undercover officer was present, wrapped in a blanket that covered everything except her face.[4] Defendant was promptly arrested upon entering the room.

Defendant was charged with (1) one count of child sexually abusive activity, MCL 750.145c(2)(a); (2) two counts of using a computer to commit a crime, MCL 752.796; and (3) one count of accosting a child for immoral purposes, MCL 750.145a. He moved to dismiss the charges on the ground of entrapment.

Following an evidentiary hearing, the trial court issued a written opinion and order denying defendant's motion. The court found that defendant did not establish that he was entrapped because the "police did not engage in conduct that would impermissibly induce a person similarly situated to the defendant, though otherwise law-abiding, to commit the crime," and "[f]urthermore, the police conduct at issue was not so reprehensible that it cannot be tolerated regardless of its relationship to the crime." Essential to both conclusions was the trial court's finding that the police merely provided the opportunity for defendant to commit criminal acts involving arranging to meet a 15-year-old minor for paid sexual activity and defendant willingly seized that opportunity.

## II. STANDARD OF REVIEW

The first issue we must address concerns the proper standard of review for this Court to apply. In our order granting leave in this case, we stated:

> This Court must resolve the question of which standard of review applies to entrapment rulings. In *People v Johnson*, 466 Mich 491; 647 NW2d 480 (2002), our Supreme Court stated that "[a] trial court's finding of entrapment is reviewed for clear error." *Id*. at 497. That standard of review has been applied numerous times by our Court with a citation to *Johnson*. But a separate line of cases has relied on *People v Fyda*, 288 Mich App 446; 793 NW2d 712 (2010), where we stated: "Whether entrapment occurred is determined by considering the facts of each case and is a question of law for this Court to decide de novo." *Id*. at 456. In order to resolve this conflict in Michigan law, we grant defendant's application for leave to appeal the trial court's ruling on entrapment here and instruct the parties to brief the issue on appeal. [*People v Jade*, unpublished order of the Court of Appeals, entered October 16, 2023 (Docket No. 365951).]

In resolving this apparent conflict, we begin with the understanding that in our hierarchical court structure, the Michigan Supreme Court is the appellate court of last resort with respect to Michigan law and this Court is bound to follow its decisions so long as the Michigan Supreme

---

[3] Before the operation began, law enforcement did not conduct a reverse search of the decoy phone number. However, they did so after the operation ended and found that the phone number was associated with multiple other people.

[4] It is not known whether this officer was the same person depicted in the online advertisement.

Court itself has not overruled them. As our Supreme Court has stated, "[t]he Court of Appeals is bound to follow decisions by this Court except where those decisions have clearly been overruled or superseded *and is not authorized to anticipatorily ignore our decisions where it determines that the foundations of a Supreme Court decision have been undermined.*" *Associated Builders & Contractors v City of Lansing*, 499 Mich 177, 191-192; 880 NW2d 765 (2016). "[I]t is the Supreme Court's obligation to overrule or modify case law if it becomes obsolete, and until [that] Court takes such action, the Court of Appeals and all lower courts are bound by that authority." *Id*. at 192-193 (quotation marks and citation omitted; first alteration in original).

In *Johnson*, our Supreme Court stated the standard of review applicable to a trial court's entrapment ruling as follows:

> A trial court's finding of entrapment is reviewed for clear error. [*People v Jamieson*, 436 Mich 61, 80; 461 NW2d 884 (1990) (opinion by BRICKLEY, J.[5]]. Clear error exists if the reviewing court is left with a definite and firm conviction that a mistake has been made. *People v Kurylczyk*, 443 Mich. 289, 303, 505 N.W.2d 528 (1993) (opinion by GRIFFIN, J.). A defendant has the burden of establishing by a preponderance of the evidence that he was entrapped. *People v D'Angelo*, 401 Mich 167, 182; 257 NW2d 655 (1977). [*Johnson*, 466 Mich at 497-498.]

In *Jamieson*, our Supreme Court stated:

> When an accused claims entrapment, the trial court must conduct a separate evidentiary hearing to resolve the issue. The defendant bears the burden of proving by a preponderance of the evidence that law enforcement officials engaged in reprehensible behavior to obtain a conviction. The facts of each case must be examined to determine whether, under the circumstances, the governmental activity would induce a hypothetical person not ready and willing to commit the crime to engage in criminal activity. The trial judge's findings on the issue are subject to appellate review under the clearly erroneous standard. *People v D'Angelo*, 401 Mich 167, 183; 257 NW2d 655 (1977). [*Jamieson*, 436 Mich at 80.]

In *D'Angelo*, our Supreme Court addressed the issue "whether the entrapment question is to be decided by the trial court or the jury" and held that "the judge and not the jury must determine its existence." *D'Angelo*, 401 Mich at 172-174. Thus, the Court explained:

> When the defendant raises the issue of entrapment, whether before or during trial, the appropriate procedure will require the trial court to conduct an evidentiary hearing in the jury's absence, procedurally similar to what the bench and bar of this State have come to know as the "Walker hearing"[6] in cases involving statements

---

[5] In *Jamieson*, Justice BRICKLEY's opinion was joined by Justice RILEY and Justice BOYLE. Additionally, Justice CAVANAGH and Justice LEVIN each wrote separate concurring opinions.

[6] *People v Walker (On Rehearing)*, 374 Mich 331; 132 NW2d 87 (1965).

attributable to the defendant. Both the prosecution and the defendant will be free to present evidence. [*Id*. at 177-178.]

Furthermore,

In deciding the entrapment question the trial court should make specific findings of fact. Should the trial court find the claim of entrapment to be proved, the related charge will be dismissed. If the court finds the claimed entrapment not proved, the prosecution will proceed.

The trial court's finding will be subject to appellate review under the clearly erroneous standard. [*Id*. at 183.]

Our Supreme Court has made clear that the question whether entrapment occurred is a highly fact-intensive question, requiring the trial judge to conduct an evidentiary hearing on the issue and to make specific findings of fact. *Johnson*, 466 Mich at 497-498; *Jamieson*, 436 Mich at 80; *D'Angelo*, 401 Mich at 172-174, 177-178, 183. The trial judge's factual findings will be reviewed on appeal under the clear error standard. *Johnson*, 466 Mich at 497; *Jamieson*, 436 Mich at 80; *D'Angelo*, 401 Mich at 183.

Nonetheless, the test that Michigan courts must apply to determine whether the particular facts of a case constitute entrapment, and the ultimate decision whether entrapment occurred, also involve principles of law that are expressed in a body of common law developed in this state's jurisprudence defining the standards and boundaries of the entrapment defense. *Jamieson*, 436 Mich at 65, 87. Our Supreme Court held that questions of law are reviewed de novo. *People v Daoud*, 462 Mich 621, 629-630; 614 NW2d 152 (2000). As explained in the context of reviewing a ruling on a suppression motion following a *Walker* hearing:

Although we review for clear error the trial court's factual findings regarding a defendant's knowing and intelligent waiver of *Miranda* rights, we agree with the prosecution that the meaning of "knowing and intelligent" is a question of law. We review questions of law de novo. [*Id*. at 629-630.][7]

Our Supreme Court specifically analogized entrapment evidentiary hearings to *Walker* hearings. *D'Angelo*, 401 Mich at 177-178. Thus, an appellate court reviewing a trial court's

---

[7] See also *People v Sammons*, 505 Mich 31, 41; 949 NW2d 36 (2020) ("We review a trial court's findings of fact in a suppression hearing for clear error. The application of law to those facts is a constitutional matter that this Court reviews de novo." Although the present matter does not present a constitutional issue, issues of nonconstitutional common law are still reviewed de novo. Cf. *People v Gafken*, 510 Mich 503, 510; 990 NW2d 826 (2022) ("Whether a common-law affirmative defense is available for a statutory crime is a question of law that we review de novo."). The defense of entrapment is also a doctrine defined by Michigan common law. *Jamieson*, 436 Mich at 65, 68, 72-73, 87; see also *D'Angelo*, 401 Mich at 179.

entrapment ruling must review the trial court's findings of fact for clear error and review de novo questions of law such as the application of the common-law entrapment standards to those facts.

This is consistent with how our Supreme Court has described the procedure of entrapment hearings when comparing these hearings to other analogous legal frameworks. In *People v Hartwick*, 498 Mich 192, 212-214; 870 NW2d 37 (2015), our Supreme Court held that the determination of a person's "entitlement to immunity under § 4 [of the Michigan Medical Marihuana Act (MMMA)] is a question of law" that also "necessarily involves resolving factual disputes" regarding the person's compliance with the statutory requirements. The Court explained as follows regarding the standard of review to apply on appeal of a trial court's immunity ruling:

> Other matters routinely conducted in pretrial contexts, such as entrapment hearings, call for the trial court to act as both the finder of fact and arbiter of law. Like entrapment, § 4 immunity "is not a defense that negates an essential element of the charged crime. Instead, it presents facts that are collateral to the crime that justify barring the defendant's prosecution." We therefore conclude that the trial court must resolve factual disputes for the purpose of determining § 4 immunity.
>
> Of course, the trial court's determinations are not without review. Questions of law are reviewed de novo by appellate courts. A trial court's factual findings are subject to appellate review under the clearly erroneous standard:
>
>> Findings of fact by the trial court may not be set aside unless clearly erroneous. In the application of this principle, regard shall be given to the special opportunity of the trial court to judge the credibility of the witnesses who appeared before it.
>
> We find no reason, nor have the parties offered any reason, to deviate from this model of appellate review. Therefore, we conclude that specific factual findings made by the trial court in a § 4 immunity hearing are reviewed under the clearly erroneous standard, and questions of law surrounding the grant or denial of § 4 immunity are reviewed de novo. Further, the trial court's ultimate grant or denial of immunity is fact-dependent and is reviewed for clear error. [*Hartwick*, 498 Mich at 214-215 (citations omitted).]

In support of its conclusion that the trial court's ultimate decision is reviewed for clear error, the *Hartwick* Court cited *Johnson*, 466 Mich at 497, which as we previously noted, held that a "trial court's finding of entrapment is reviewed for clear error." Therefore, we understand the above statement in *Hartwick* to also express our Supreme Court's understanding of the complete standard of review that is applicable to a trial court's entrapment ruling: the court's factual findings are reviewed for clear error, questions of law are reviewed de novo, and the trial court's ultimate ruling on the issue of entrapment is reviewed for clear error. See *Hartwick*, 498 Mich at 214-215.

Because we are bound by the holdings of our Supreme Court, *Associated Builders*, 499 Mich at 191-193, we decline to follow this Court's statement of the applicable standard of review in *Fyda*, 288 Mich App at 456, to the extent it is inconsistent with our Supreme Court's holdings in *Johnson* and *Hartwick*.

III.  ANALYSIS

Defendant contends that his conviction warrants reversal on the grounds of entrapment. He posits that the conduct of law enforcement officers amounted to impermissible inducement, as it would have prompted a person in a similar situation to commit the offense. In support of this assertion, defendant highlights that the advertisement featured a 20-year-old woman and was disseminated on a website targeted at adults. Furthermore, defendant raises doubts about the veracity of the decoy's claim of being 15 years old, citing the association of the phone number with an adult and alleging that the decoy inappropriately heightened the defendant's criminal culpability.

Moreover, defendant asserts that law enforcement officers were involved in reprehensible conduct that should not be tolerated as they specifically targeted individuals soliciting adult escorts and then "duped" people like defendant into committing more serious crimes than intended.  These illicit activities involved soliciting sexual acts from a minor in exchange for money.  Defendant claims this is tantamount to law enforcement officers manufacturing crimes that otherwise would not have ever occurred, improperly escalating the nature of the offense without a legitimate investigatory purpose or any reason to believe defendant was inclined to commit more serious crimes involving minors.

In Michigan, entrapment is defined by a "modified objective test."  *Johnson*, 466 Mich at 508.  "Under the current entrapment test in Michigan, a defendant is considered entrapped if either (1) the police engaged in impermissible conduct that would induce a law-abiding person to commit a crime in similar circumstances or (2) the police engaged in conduct so reprehensible that it cannot be tolerated."  *Id*. at 498.  However, there is no entrapment if "law enforcement officials present nothing more than an opportunity to commit the crime."  *Id*.

"The purpose of the entrapment doctrine is to deter unlawful government activities and to preclude the implication of judicial approval of impermissible government conduct."  *D'Angelo*, 401 Mich at 173.  It is the defendant's burden to establish entrapment by a preponderance of the evidence.  *Id*. at 183.  According to our Supreme Court, the

> focus of the entrapment inquiry under the objective test is upon the nature of the police conduct.  The guilt or innocence of the defendant is irrelevant to that determination.  A decision whether entrapment has occurred will involve the court's evaluation of the government conduct which resulted in the charges against the defendant. [*Id*. at 176.]

We now consider each prong of the entrapment test in turn.

A.  INDUCEMENT

Entrapment may be found if "the police engaged in impermissible conduct that would induce a law-abiding person to commit a crime in similar circumstances."  *Johnson*, 466 Mich at 498.

> When examining whether governmental activity would impermissibly induce criminal conduct, several factors are considered: (1) whether there existed

appeals to the defendant's sympathy as a friend, (2) whether the defendant had been known to commit the crime with which he was charged, (3) whether there were any long time lapses between the investigation and the arrest, (4) whether there existed any inducements that would make the commission of a crime unusually attractive to a hypothetical law-abiding citizen, (5) whether there were offers of excessive consideration or other enticement, (6) whether there was a guarantee that the acts alleged as crimes were not illegal, (7) whether, and to what extent, any government pressure existed, (8) whether there existed sexual favors, (9) whether there were any threats of arrest, (10) whether there existed any government procedures that tended to escalate the criminal culpability of the defendant, (11) whether there was police control over any informant, and (12) whether the investigation was targeted. [*Id*. at 498-499.]

Here, the trial court made findings for each of the above 12 factors. The court found that factors 1, 3, 4, 5, 6, 7, 8, 9, 11, and 12 did not weigh in favor of finding that entrapment occurred. Specifically, the trial court found that there was no evidence of law enforcement making appeals to defendant's sympathy as a friend, that there was no meaningful delay between the investigation and arrest, that there were no inducements that would make committing the offense unusually attractive to an otherwise law-abiding citizen in defendant's situation, that there was no evidence of excessive consideration, that the government did not make any representations that defendant's acts were legal, that defendant was at all times free to discontinue the interaction and was not pressured by law enforcement to engage in the meeting, that defendant was not threatened with arrest before commission of the charged acts, and that there was no evidence of reliance on an informant. The trial court also found that "[w]hile the criminal conduct at issue in this case is itself sexual in nature, there is no evidence defendant was promised separate sexual favors in exchange for engaging in the charged crimes."

Finally, the trial court found that the investigation was not targeted at any particular individual, which weighed against a finding of entrapment because the use of untargeted reverse sting operations was approved by our Supreme Court in *People v Butler*, 444 Mich 965, 966; 512 NW2d 583 (1994), and this Court in *People v Williams*, 196 Mich App 656; 493 NW2d 507 (1992), on the ground that such tactics merely present individuals with the opportunity to commit a crime.

In contrast, the trial court initially found that the second factor weighed in favor of finding entrapment because there was no evidence that defendant was known to commit the charged crimes, and that the tenth factor weighed in favor of finding entrapment because there was evidence that law enforcement officers took steps to escalate the seriousness of defendant's criminal actions.

However, the trial court went on to find that, taking all the circumstances into account, the weight of evidence was against the idea that these two isolated factors could be seen as proof that the defendant was impermissibly induced to engage in criminal conduct. The court found that despite defendant's lack of similar criminal history, the text message conversation indicated that defendant had "no reservations about arranging for paid sex with someone younger than 18." The trial court concluded that, despite the two isolated factors, the overall circumstances did not support the argument that defendant was, in the words of the trial court: "impermissibly induce[d]… though otherwise law-abiding, to commit the crime."

In reaching its conclusions, the trial court relied heavily on *Butler* and *Williams*. In *People v Butler*, 199 Mich App 474, 476; 502 NW2d 333 (1993), rev'd 444 Mich 965 (1994), law enforcement officers conducted a "reverse buy" operation in which an undercover officer "sent word out on the streets that he had cocaine available for sale," and made his electronic beeper number available. The defendant contacted the undercover agent, and he was eventually arrested after presenting several thousand dollars in exchange for half a kilogram of cocaine. *Id*. at 476-478. This Court determined that the defendant was entrapped. *Id*. at 481. However, the Michigan Supreme Court reversed this Court's judgment, reasoning as follows:

> We agree with the trial court's determination that the reverse-buy operation conducted by law enforcement officials in this case did not constitute entrapment. This Court has previously held that undercover drug sales operations conducted by government officials are not indicative of entrapment per se. Further, as found by the trial court, nothing in the conduct of the government in this particular case rose to the level of entrapment. *Law enforcement officials did nothing more than to present defendants with the opportunity to commit the crimes of which they were convicted*. [*Butler*, 444 Mich at 965-966 (citation omitted; emphasis added).]

In *Williams*, 196 Mich App at 658-659, undercover officers posed as drug dealers and sold pieces of soap made to look like rocks of crack cocaine and laced with small amounts of cocaine to people who approached them "on a corner in an identified area of high drug activity." This Court concluded that such activity did not constitute entrapment, reasoning in relevant part as follows:

> Furthermore, the police did not 'offer' to sell drugs. Rather, the defendants sought out the officers, initiated contact with them, and inquired whether the officers had any cocaine. Under these circumstances, we cannot classify the police conduct as a fishing expedition.
>
> Thus, the police conduct consisted of nothing more than the presence on a public street of an undercover officer who, although posing as a drug dealer, did nothing to instigate or induce the purchase of drugs. The police did not manufacture any crime, but merely furnished an opportunity to commit a crime. Furnishing an opportunity to commit a crime does not constitute entrapment. Moreover, entrapment does not occur merely because the undercover officers posed as drug dealers, because the mere fact of deceit will not bar prosecution. In our opinion, the police conduct involved in this case would not induce a law-abiding person to commit the crime. [*Id*. at 662-663 (citations omitted).]

Similarly, here, we concur with the trial court findings that law enforcement officers simply presented defendant with the opportunity to engage in criminal activity. This distinction is vital because it underscores the fact that defendant's actions were not coerced or manipulated by law enforcement. Rather, it highlights defendant's voluntary choice to commit the crime for which he was convicted. Law enforcement posed as a 15-year-old who was offering sexual acts in exchange for money, posted an advertisement on an adult-oriented website, and initially claimed to be old enough to post on the site. After defendant responded to the advertisement, defendant was

informed in clear and certain terms that the decoy was actually 15 years old. Defendant was thereby presented with an opportunity to either proceed with committing the relevant criminal acts or decline. Merely presenting an opportunity to commit a crime is not entrapment. *Johnson*, 466 Mich at 498; see also *Butler*, 444 Mich at 965-966; *Williams*, 196 Mich App at 662-663.

Defendant asserts that despite his actions, he was, in fact, entrapped due to the government's impermissible inducement leading to his commission of the crime. This inducement is alleged to have involved a significant escalation of the situation, transitioning from the solicitation of an adult escort to the commission of the serious felonious act of soliciting a child. Defendant relies heavily on *People v Killian*, 117 Mich App 220; 323 NW2d 660 (1982), to support this argument.

*Killian* was another case involving an undercover law enforcement drug sale operation. *Id*. at 222. This Court stated in relevant part as follows:

> The most troubling aspect of the activities of the police in this case is the escalation of defendant's criminal culpability. The police knew that defendant used both marijuana and cocaine and that he had offered to sell marijuana to an acquaintance who was a police officer. Although there was testimony that defendant had given a very small amount of cocaine to a friend, the police had good reason to believe that defendant was not involved in cocaine sales. Police were not gathering evidence of crimes which they had any reason to suspect defendant had committed or would commit in the future. We do not imply here that police must have probable cause to use an undercover agent or informer to make a drug buy. We emphasize that *police not only did not suspect defendant of involvement in cocaine sales; they had every reason to suspect that he was not involved. In part, the police activity here is entrapment because the sale of large quantities of cocaine is an offense of a different order than the use of cocaine or the sale of marijuana.*
>
> We do not view this case as one in which a close personal friendship was exploited or one in which the pattern of inducement itself was outrageous. Nonetheless, the exploitation of a friendship and the offer of monetary gain may have been sufficient to induce most persons in defendant's position (i.e., cocaine users) to sell cocaine. *Because police knew that defendant was not a cocaine dealer, yet induced him to make substantial cocaine sales, we must conclude that police agents impermissibly manufactured or instigated a crime*. [*Id*. at 223-224 (citations omitted; emphasis added).]

In the present case, law enforcement conducted an undercover operation without prior information about defendant, in contrast to the circumstances in *Killian*. It is noteworthy that the police in *Killian* targeted a defendant with no prior involvement in cocaine sales, while the operation in the present case bears more resemblance to the undercover operations in *Butler* and *Williams*. *Butler* and *Williams* involved the provision of illegal substances for potential buyers to contact the undercover officer and initiate a purchase, which is analogous to the events in this case. Additionally, while it is necessary to consider government escalation of the defendant's criminal culpability as a significant factor, it is not determinative in the issue of entrapment. *Johnson*, 466 Mich at 498-499; *Killian*, 117 Mich App at 223. To the extent defendant argues that he was

deceived, that fact by itself also does not establish entrapment. *Williams*, 196 Mich App at 663 ("Moreover, entrapment does not occur merely because the undercover officers posed as drug dealers, because the mere fact of deceit will not bar prosecution.").

Defendant also contends that the trial court erred as a matter of law by focusing on defendant's predisposition to commit this crime—thus applying a subjective test rather than Michigan's objective test for entrapment—and finding that defendant readily seized the opportunity to engage in sex with a 15-year-old child. However, "although the objective test is mainly concerned with the existence of reprehensible police conduct, consideration must be given to the willingness of the accused to commit the act weighed against how a normally law-abiding person would react in similar circumstances." *People v Juillet*, 439 Mich 34, 54; 475 NW2d 786 (1991) (opinion by BRICKLEY, J.) (quotation marks and citation omitted). Hence, "the court can review the circumstances of the defendant to determine whether the police conduct would induce a similarly situated person, with an otherwise law-abiding disposition, to commit the charged crime. The circumstances of the particular defendant may be considered by the trial court in analyzing the ready and willing component of the objective entrapment test, as we stated in *Jamieson*." *Id*. at 55.

Here, the trial court did not err in its application of the legal framework for discerning whether entrapment occurred under the inducement prong of the test. *Hartwick*, 498 Mich at 214-215. Furthermore, based on our review of the record, we are not left with a definite and firm conviction that the trial court made a mistake in its factual findings and we therefore conclude that its findings were not clearly erroneous. *Johnson*, 466 Mich at 497-498. The trial court also did not clearly err in finding that law enforcement in this case did not engage in impermissible conduct that would have induced a law-abiding person to commit the criminal acts in similar circumstances. *Johnson*, 466 Mich at 498.

## B. REPREHENSIBLE CONDUCT

Entrapment may also be found if "the police engaged in conduct so reprehensible that it cannot be tolerated." *Johnson*, 466 Mich at 498. In defining the reprehensible conduct prong, this Court has explained that "there is certain conduct by government that a civilized society simply will not tolerate, and the basic fairness that due process requires precludes continuation of the prosecution where the police have gone beyond the limit of acceptable conduct in ensnaring the defendant, without regard to causation." *People v Fabiano*, 192 Mich App 523, 532; 482 NW2d 467 (1992).

In this case, the trial court determined that the conduct of law enforcement did not reach a level of reprehensibility that would render it intolerable. The conduct in question primarily involved presenting defendant with the opportunity to engage in the criminal acts for which he was convicted, and, as previously articulated, the mere presentation of the opportunity to commit criminal acts in a non-targeted manner does not constitute reprehensible conduct amounting to entrapment. *Johnson*, 466 Mich at 508 ("[T]he police did nothing more than provide defendant with an opportunity to commit a crime. Such conduct was not reprehensible and does not establish entrapment."); see also *Butler*, 444 Mich at 965-966; *Williams*, 196 Mich App at 662-663. The trial court in the present case specifically found:

[T]he police presented defendant with an opportunity to commit a crime. While defendant hesitated somewhat when the officer indicated she was 15 years old, his subsequent texts and behavior demonstrate he was willing to arrange for sex with a minor. The police did take investigative steps that changed the nature of the crimes defendant is alleged to have committed, but there is no evidence that the police took those steps merely to enhance defendant's eventual sentence. Identifying individuals willing to make plans to engage in sex with minors is a legitimate law enforcement goal that justifies the decision to see whether defendant's conduct might expose him to heightened criminal liability. When the police do nothing more than provide a defendant with an opportunity to commit a crime, such conduct is not reprehensible and does not establish entrapment. *Johnson*, 466 Mich at 507-[5]08. Consequently, the escalation in this case was not so reprehensible as to warrant finding defendant was entrapped.

We discern no error in the trial court's application of the law, nor do we discern clear error in the court's findings. *Hartwick*, 498 Mich at 214-215; *Johnson*, 466 Mich at 497-498. As was true in *Williams*, "[t]he purpose of the challenged police activity was the detection of crime, not its manufacture." *Williams*, 196 Mich App at 663. In concluding that the trial court did not clearly err in its determination on either prong of the entrapment test, we therefore also conclude that the trial court did not clearly err in its ultimate decision to deny defendant's motion to dismiss on the ground of entrapment. *Hartwick*, 498 Mich at 214-215. Accordingly, defendant is not entitled to relief.

Affirmed.

/s/ Stephen L. Borrello
/s/ Christopher M. Murray
/s/ Anica Letica